## Byrd *vs.* Conway, Auditor, &c.

The chief object in creating the office of bank commissioner and visitor, was to obtain for the use of the public and State authorities, authentic statements of the condition of the banks in the State; and enable the government to adopt measures for the preservation of the public credit; and promotion of the common weal.

The visitation of all of the banks in the State was necessary. And as to the Real Estate Bank, it made no difference whether the trustees mentioned in the deed of assignment were in possession of her assets, or the trustees contemplated in the act of Assembly appointing the commissioner and visitor.

If the commissioner performed his duty in visiting the banks, it was the duty of the auditor to allow his account for services. He was entitled to his salary in the same manner as other public officers.

The power of the legislature to create the office and fix the salary, is unquestionable.

No money can be drawn from the treasury unless appropriated by law. And the appropriation to pay officers appointed for winding up the affairs of the State Bank and its branches, includes the salary of the bank commissioner and visitor.

By law, and the practice of the Executive department of the government of this State, the fiscal year commences on the 1st day of October.

A presumption, that the legislature created an office, fixed a salary, provided an incumbent, and required of him certain specified duties, onerous to himself and important to the State, and not appropriate the money requisite to pay his salary, will not be indulged.

Nor will it be presumed, that an appropriation for a specific object, will be for an amount greatly above what is needed for that object.

The bank commissioner and visitor, is an officer contemplated and provided for, in the act appropriating moneys "to pay officers appointed by the present legislature to wind up the State Bank and branches," approved 3d February, 1843, though he is not specially named therein.

*Pike & Baldwin*, for relator.

*Conway*, for himself.

By the Court, Ringo, C. J. On the petition of Richard C. Byrd, sworn to, and exhibited and filed in this court, on a previous day of the present term, a writ of *mandamus* was issued, by order of the court to Elias N. Conway, as auditor of public accounts of this State, reciting in substance, that said Byrd, on the 2d day of February, 1843, was duly elected the bank commissioner and visitor of the State of Arkansas. That he was duly commissioned as such bank commissioner and visitor on the 23d day of February, 1843, and was duly qualified as such by taking, on that day, the oath prescribed by law, which were endorsed on his commission. That within three months after his said election, to wit, on the 20th day of March, 1843, he entered upon the discharge of the duties of said office, and

Byrd *vs.* Conway, Auditor, &c.

thenceforward has continued to discharge all of the duties thereunto appertaining as prescribed by law, and particularly set forth in his petition; having neither resigned, or been removed from said office, nor in any way prevented from discharging the duties thereof; whereby he has become entitled to receive out of the State treasury, the *full salary and compensation* allowed by *law to such* officer, to wit, at the rate of $1400, for the first year, in quarter yearly payments, to wit: for the first quarter, ending on the 17th day of June, $350; and for the second and third quarters, the like sum, each, the former ending on the 17th day of September, and the latter on the 19th day of December.   That on the 17th day of June, 1843, he made out his account against the State for his salary as bank commissioner and visitor, for one quarter as aforesaid for both banks, ending on that day, for the sum of $350, and presented the same to said Conway, as auditor of public accounts of said State, thereupon demanded of him his warrant therefor, but that he refused to issue his warrant for more than one half of said amount, upon the pretence that said Byrd, as such commissioner and visitor, as aforesaid, was only entitled to receive pay as commissioner and visitor of the State Bank; so that the whole amount of his salary for said first quarter remains unpaid.   That he in like manner presented his account for the amount of his salary for said second and third quarters, respectively, on the 19th days of September and December, aforesaid, and demanded of said auditor his warrant therefor; which he, in each instance, upon the pretence aforesaid, refused to issue; and that he, said Byrd, reserving to himself all his legal rights in the premises, thereupon, at the dictation of said Conway, as auditor, made out his account for his salary for $175, for each of said second and third quarters, for which amounts said auditor thereupon issued his warrants, leaving the residue of his salary for said second and third quarters, amounting to $350, unpaid, and commanding said Conway, as auditor of public accounts, as aforesaid, to issue his warrants in favor of said Byrd, for $350, his salary for one quarter of the first year of his term, in the said office of bank commissioner and visitor of the State of Arkansas, due on the 13th day of June; also for $175, the residue of his salary as commissioner and visitor aforesaid, due on the 17th day of September, and also for $175,

the residue of his salary, as such commissioner and visitor, due on the 19th day of December, 1843, or show good cause why he should not do so. The return of the auditor to this writ, though unnecessarily prolix and argumentative, and destitute both of legal form, and legal precision, shows his refusal to audit the accounts of the relator, and issue his warrants for the amount thereof respectively, as he was by said writ required to do; and his election to justify such refusal, according to the alternative in the mandate of said writ. The facts set forth and relied upon by the auditor, as a legal justification of his refusal to audit those accounts of the relator, and issue his warrants for the amount claimed thereon, according to our understanding of the return, are simply the following, to wit: First, that the property and effects of the Real Estate Bank have never been transferred to, or possessed by, the trustees, whose election and appointment are provided for by the act of the General Assembly of this State, *entitled* "an act to settle and liquidate the affairs of the Real Estate Bank of the State of Arkansas," approved 31st January, 1843. And second, that there is no appropriation, by law, of any money in the State treasury, for the payment of such commissioner and visitor, for his visitation of the Real Estate Bank.

This return is demurred to by the relator, upon the ground, 1st, that the act of the General Assembly in said return mentioned, entitled "an act to settle and liquidate the affairs of the Real Estate Bank of the State of Arkansas," does not make his right to any part of the salary contingent, or dependent, on the trustees provided for by said act obtaining possession of the assets of said bank. 2d, that said act, so far as it provides for the appointment of new trustees, and for depriving the original trustees of the property in their hands, is unconstitutional and void. And 3d, that the appropriation in the return mentioned, covers and includes the whole salary of the commissioner and visitor of banks.

The auditor joined in the demurrer, and, by the argument contained in, or suggested by, his return, insists that the relator possesses no legal authority whatever, by virtue of his office as bank commissioner and visitor, to visit the Real Estate Bank, so long as its property and effects remain in the custody and legal charge of persons, other

than the trustees, whose election and appointment are provided for, by the act of the legislature, approved January 31st, 1843, cited above; and inasmuch as the trustees, whose election was provided by said enactment of the legislature, have not as yet ever had possession of said bank, or of its property and effects, one of the contingencies provided by law, upon the occurrence whereof his right to more than a moiety of the entire sum prescribed as the salary of such officers, has happened and continues to exist, whereby his right to a moiety of said salary is defeated.

The statute creating the officer in question provides, that there shall be elected by the General Assembly of this State, at its present session, and at every subsequent regular session thereof, an officer, who shall be denominated the bank commissioner and visitor of the State of Arkansas, who shall receive an annual salary of $1400, for the first year, and one thousand for every year thereafter, to date from the time that he enters upon his duties as visitor and examiner of the Real Estate and State Banks; but if any contingencies should occur whereby he is prevented from acting as visitor and examiner of either of said banks, then he shall, if he acts as visitor or examiner but for one, receive one half the salary herein provided for; shall be commissioned by the Governor, and hold his office for the term of two years, and until his successor shall be elected and qualified. The bank commissioner herein provided for, shall be required to perform the same duties, make the same report, and shall have the same powers in regard to the State Bank and branches as the Real Estate Bank and branches. *Session Acts,* 1842, *sec.* 46, *p.* 103. The 48th section of the same statute, amongst other things requires this officer, "at his first visitation to make out a complete schedule of the property and assets in the hands of said trustees, and to file the same in the office of the Secretary of State." These provisions are contained in the act providing for the settlement and liquidation of the affairs of the Real Estate Bank, in which the trustees named in the deed of trust previously executed by order of the central board of directors of said bank, and in several places mentioned, as well as those for whose election said act provides; and the trustees named in said deed are the trustees last mentioned in the act, before the terms "said trus-

tees" are used in the 48th sec. thereof; consequently they, if strictly construed, must be held to refer to the trustees named in the deed; yet, although this be the literal interpretation of the statute, we consider it of very little consequence as regards the right of the officer to his salary. Because we consider it perfectly manifest, that the chief object of the legislature, in creating the office, was to obtain, for the use and information of the public authorities of the State, from time to time, such full and authentic statements of the true situation and condition of the affairs of both banks, as would enable the government to adopt such measures in respect thereof, as should at any time be deemed necessary to prevent or punish fraud, preserve the public credit, or protect the interests of the people; and therefore the visitation of the Real Estate Bank was alike necessary, and within the contemplation of the law, whether its property and effects remained in the possession of the trustees named in the deed of assignment, or passed into the custody of those whose election and appointment are provided for by the statute; and nothing is perceived in any part of the statutes in any way tending to establish the conclusion, that the Real Estate Bank was to be visited, upon the condition that its property and effects were placed in the hands of the trustees, last mentioned; but was never designed to be subjected to the visitation of this officer, until its property and effects were placed in their possession. Therefore, the fact of the assets of the bank being in the possession of either set of trustees, cannot in any way affect the right of the commissioner to the full amount of the salary allowed him by law, if he performed in fact the whole duty enjoined upon him, and that he did, the return before us admits, if not expressly, at least by implication. The auditor, therefore, in our opinion fails to set forth any contingency which in law defeats the right of the relator to any part or portion of the salary claimed. The statute provides for every contingency by which the officer should either fail in, or be prevented from, discharging his duty as visitor and examiner of both banks, in respect to either one of them, but upon the discharge of his duties entire, confers upon him a legal right to the whole amount of salary, and to demand, and receive payment thereof, quarter yearly, in like manner as other public creditors, out of the State

treasury, consequently the demurrer to so much of the return to the writ, as purports to deny the right of the relator to a moiety of the salary given him by law, and to justify the refusal of the auditor, to audit his accounts, and issue his warrants for the full amount thereof, as set forth in the proceedings, on the ground that the trustees, whose election is provided for by the statute, cited above, have never had possession of the assets of the Real Estate Bank, is well taken and must be sustained. The second ground specially assigned as cause of demurrer, presents no question, upon the facts presented, because it is wholly immaterial to the right of the relator, whether other portions of the statute be, or be not, unconstitutional. The power of the legislature to create such office, and prescribe the salary of the officer, who should be the incumbent thereof, is not, we conceive, either questioned, or questionable, and his right to the salary depends entirely upon these provisions in the statute, and his due and complete performance of all the duties enjoined upon him by law. The right of the relator to the money demanded by him on account of his salary, allowed him by law, as the bank commissioner and visitor of the State of Arkansas, being thus determined, it now devolves upon us to ascertain whether there is any money appropriated by law, for the payment of his salary, or any part of it. If the law makes such appropriation, the auditor is bound to audit the accounts, and issue his warrants for the amount thereof. If it does not, he is equally bound to withhold them, notwithstanding the legal right of the relator to the money due him from the State; because the constitution, *Art. VII*, *sec.* 4, ordains that "no money shall be drawn from the treasury, but in consequence of an appropriation by law." Whether there is, or is not, an appropriation by law, to pay the salary in question, depends entirely upon the true interpretation of that portion of the first section of the statute, entitled "an act making appropriations for the years 1843, 1844, and part of 1842, and for balances due from the State," "approved the 3d February, 1843," which enacts, "that the following sums of money be, and they are hereby, appropriated, out of any money in, or which shall be in, the treasury, not otherwise appropriated, to wit, to pay officers appointed by the present legislature to wind up the State Bank and branches, twenty-two thousand

dollars." If this does not include the salary in question, it is concluded on all hands, that there is no law appropriating any thing for the payment thereof; but the auditor admits, *arguendo* in his return, that there is an appropriation of money, by the provisions of the statute last quoted, to pay the relator a moiety of his salary, that is, to pay said officer for visiting the State Bank; but he denies that any thing is thereby appropriated to pay him for visiting the Real Estate Bank.

The relator insists that he is one of the class of officers therein mentioned, and that the payment of his salary for visiting the Real Estate Bank, as well as the State Bank, is thereby embraced and provided for. And this must, in our opinion, be true, if the bank commissioner and visiter is one of the officers referred to and embraced by the law. The inquiry must therefore be restricted to the single question whether the bank commissioner and visiter is one of the officers embraced by the law, making said appropriation? The State Bank, before this appropriation was made, had been put in liquidation by a statute, approved 31st January, 1843, *Sess. Acts, p.* 77, which statute, amongst other things, declared "that the Bank of the State of Arkansas and branches, shall hereafter have no power to issue notes in discount of any check, promissory note, bill, bond, or other obligation, or to loan money in any manner whatever; "and provided for the election, at that session, by a joint vote of both houses of the general assembly, of "two receivers for the principal bank, and two receivers for each of the branches;" and also for the election in like manner, of "an attorney for the principal bank, and one for each of the branches;" and further, provided for the appointment, by the governor, of "an agent for the principal bank, and one for each of the branches." It is esteemed worthy of remark, that the statutes, creating all of these offices, including that of bank commissioner and visiter, were approved on the 31st day of January, 1843, a period of four months, after the commencement of the fiscal year, as formerly established by law, and yet continued by the custom and practice of the several offices belonging to the executive department of the government; and nearly one month thereafter, if it is to be considered as commencing, and dating annually, from the first day of

January, instead of the first day of October; and that it never was contemplated, that some of them should enter upon the discharge of the duties prescribed to them, for a period of time subsequent to their election, as the law itself declared that the receivers shall not be commissioned until they have severally furnished such bond and security as the statute prescribed, and fixed the time when the bank commissioner and visiter shall commence the discharge of his official duties, between the first Monday of March, and three months thereafter; but upon the supposition that all the officers named were in fact elected, commissioned, and qualified, and had entered upon the discharge of their respective duties, on the first day of February, 1843, which it is certain never could have been the fact, and it never was contemplated that it should be so, the aggregate of their salaries, from that time to the first day of January, 1845, (including the salary of the bank commissioner) would amount only to the sum of $22,058 33⅓, and exclusive thereof, only to the sum of $19,741 66⅔; and upon the supposition that the fiscal year is to be computed from the first of October, which we understand to be the practice in all the executive offices, then the aggregate salaries of all said officers would be, from the first February, 1843, to the first October, 1844, only $19,223 33⅓, including that of the bank commissioner, and exclusive thereof, only $17,166 66⅔. There may be some slight inaccuracy in these estimates, but they are believed to be substantially correct. It appears therefore from every view of the subject, that this appropriation is amply sufficient to pay each of said officers the full amount of his salary, upon every probable contingency, and that by excluding therefrom the salary of the bank commissioner, a considerable sum must remain unexpended, whether the fiscal year terminates on the last day of September, or of December; and that, estimating the salary of the bank commissioner to commence upon the day on which he entered upon the discharge of his official duties, as stated in his petition, to wit, the 20th day of March, a surplus of said appropriation must inevitably remain in the treasury, after paying in full the salary of each one of the officers aforesaid, elected or appointed by that legislature, excluding the agents, whose appointment by the governor was, by one of said statutes, provided for, and such sur-

plus would very probably be sufficient to satisfy their compensation also; but we are not now called upon to determine whether they are, or are not, to be paid out of said appropriation. But we do not consider ourselves warranted by law, in presuming that it was the design of the legislature to create an office, with a fixed salary, provide an incumbent thereof, and require of him the performance of certain specified duties, onerous to him, and important to the State, and not appropriate the amount of money requisite for the payment of his salary; or to appropriate for any specific object, an amount greatly above that which it must have been perceived could be expended for that object. We have therefore, upon a careful and deliberate consideration of all the provisions of law, relative to the subject, come to the conclusion, that the bank commissioner and visiter of the State of Arkansas is one of the officers contemplated, and provided for, by the enactment in question, appropriating $22,000 "to pay officers appointed by the present legislature to wind up the State Bank and branches," although he is not an officer necessarily embraced by the language of the statute, nor therein described by terms the most certain and appropriate; and the amount appropriated being, as before stated, amply sufficient to pay the salary of all the officers therein mentioned, including his, the auditor was bound by law to audit his accounts, and issue his warrants for the amount entire of the several sums set forth in the petition and proceedings in the case. His return therefore fails to show any legal justification of his refusal to allow said accounts, and issue his warrants for the amount thereof in favor of the relator; consequently, the demurrer thereto must be sustained.