### COTHAM *v.* COFFMAN.

Opinion delivered January 19, 1914.

1. CIRCUIT JUDGES—LIMIT OF SALARY.—A circuit judge is an officer of the State, and as such his compensation is provided for and limited by art. 19, § 11, of the State Constitution. (Page 111.)

2. CIRCUIT JUDGES—SALARY—MUST BE PAID BY STATE.—Art. 19, § 11, of the Const. of 1874, which provides for the salaries of circuit judges, limits the payment of judicial salaries to the revenue of the State. (Page 113.)

3. CIRCUIT JUDGES—PAYMENT OF SALARY BY STATE—CONSTITUTIONAL LIMITATION.—The Act of March 23, 1911, p. 78, Public Acts 1911,. creating the eighteenth circuit, is invalid under art. 19, § 11, of the Const. of 1874, insofar as it imposes the payment of two-thirds of the salary upon one county composing the circuit, and wholly exempting the other county in the circuit from any part of the burden. (Page 118.)

4. CONSTITUTIONAL LAW—EFFECT OF INVALIDITY OF ONE PORTION OF A STATUTE.—Where a part of a statute is unconstitutional, the courts will not declare the remainder void, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it can not be presumed the Legislature would have passed the one without the other. (Page 119.)

5. CIRCUIT JUDGES—SALARY—VALIDITY OF ACT.—Act No. 114, p. 78, Public Acts, 1911, *held* valid, except the provision as to the payment of salary. (Page 119.)

Appeal from Pulaski Circuit Court; *Guy Fulk,* Judge; reversed.

*Marvin Harris* and *E. L. Carter,* for appellant.

1. Mandamus will lie to compel an auditor to draw a warrant for an officer's salary. 5 Ark. 436; 26 Ark. 237; 26 Cyc. 235, and cases cited.

2. The judge of a circuit court is a State officer. Const. 1874, art. 7, § 13; art. 19, § 11; art. 7, § 22; 21 So. 293; 36 Cyc. 852, 853; 23 Cyc. 506; 11 Cyc. 415.

The proviso to section 4 of the act of 1911, Castle's Supplement to Kirby's Digest, 105, 106, placing upon Garland County the burden of paying two-thirds of salaries of the judge and prosecuting attorney is unconstitutional and void, and should be rejected as surplusage. Const. 1874, art. 16, § § 5-11; 1 Cooley on Taxation, § 225; *Id.* 228, note.

Not only is it violative of the constitutional requirements as to uniformity and equality in taxation, over the State, but also, as between the two counties composing the district, it violates the rule of apportionment in taxation, in placing this burden upon Garland County alone,

while Montgomery County, though receiving the same benefits, is exempted from any portion of the burden. 1 Cooley on Taxation, § 229; 37 Cyc. 750, and cases cited in note. See, also, 57 Ark. 554; 45 Am. Dig. (Century Ed.), tit. "Taxation," § 97 *et seq.*

3. The county court is without jurisdiction, and the proviso to the act can confer none, to make an appropriation for the payment of these salaries. Const. 1874, art. 7, § 28; *Id.,* art. 16, § 11; 55 Ark. 124; 11 Cyc. 575-578.

4. Without this proviso, the act constitutes a complete and harmonious whole, not in conflict with the Constitution, and can, and should be, allowed to stand. The proviso should be declared void. 37 Ark. 356; 48 Ark. 370; 53 Ark. 490; 46 Ark. 312; 64 Ark. 555; 63 Ark. 576; 51 Ark. 177; 56 Ark. 495; 58 Ark. 438; 8 Cyc. 802, and cases cited; *Id.* 804.

No brief filed for the appellee.

SMITH, J: This is an appeal from a judgment sustaining a demurrer to the complaint filed by appellant praying that a writ of mandamus be ordered, directed to respondent, as Auditor of State of the State of Arkansas, requiring him to issue to appellant an Auditor's warrant in the sum of $250 for his salary as circuit judge of the Eighteenth Judicial Circuit for the month ending October 31, 1913. The complaint alleged that pursuant to an act of the General Assembly approved March 23, 1911, creating the Eighteenth Judicial Circuit of Arkansas, appellant had been elected as the judge of said circuit, which was composed of Garland and Montgomery counties, and that having been commissioned and qualified, he had entered upon, and was engaged in the discharge of the duties of that office, and that appellee was the duly acting Auditor of the State of Arkansas, whose duty it was to issue to appellant, and all other circuit judges, at the end of each month, his warrant on the State Treasurer for the sum of two hundred and fifty dollars, as the salary of all circuit judges was payable monthly and amounted to three thousand dollars per year

for each judge. It was further alleged that petitioner had not received any salary for his services as circuit judge for the month of October, either from the State of Arkansas, or from Garland County, and that demand had been made for the warrant in the sum of two hundred and fifty dollars, but had been refused.

The court below sustained the demurrer, and appellant declined to plead further, but elected to stand on his complaint, and judgment was rendered on said demurrer, dismissing the complaint, and appellant has prosecuted this appeal.

Section 4 of the act creating the Eighteenth Judicial Circuit reads as follows:

"Section 4. That the judge and prosecuting attorney for the Eighteenth Judicial Circuit shall receive the same salary and fees provided by law for circuit judges and prosecuting attorneys throughout the State of Arkansas. Provided, two-thirds of the salaries of the judge and prosecuting attorney of the Eighteenth Judicial Circuit shall be paid by Garland County, by order of the county court, and one-third of the salaries of such offices shall be paid in the same manner as the salaries of other circuit judges and prosecuting attorneys throughout the State of Arkansas are paid."

The circuit judge is a State officer. *Griffin* v. *Rhoton*, 85 Ark. 89. And as such his compensation is provided for and limited by section 11, article 19, of the Constitution of the State, which reads as follows:

"Section 11. The Governor, Secretary of State, Auditor, Treasurer, Attorney General, judges of the Supreme Court, judges of the circuit court, Commissioner of State Lands and prosecuting attorneys shall each receive a salary, to be established by law which shall not be increased or diminished during their respective terms, nor shall any of them, except the prosecuting attorneys after the adoption of this Constitution, receive to his own use any fees, costs, perquisites of office or other compensation; and all fees that may hereafter be payable by law for any service performed by any officer men-

tioned in this section, except prosecuting attorneys, shall be paid in advance into the State treasury. Provided, that the salaries of the respective officers herein mentioned shall never exceed per annum:

"For Governor, the sum of $4,000; for Secretary of State, the sum of $2,500; for Treasurer, the sum of $3,000; for Auditor, the sum of $3,000; for Attorney General, the sum of $2,500; for Commissioner of State Lands, the sum of $2,500; for Judges of the Supreme Court, each, the sum of $4,000; for judges of the circuit courts and chancellors, each, the sum of $3,000; for prosecuting attorney, the sum of $400."

The section of the act creating the Eighteenth Judicial Circuit which provides for the compensation of the judge has been set out in full, and it is seen that the proviso recites that Garland County shall pay two-thirds of the salary and the State the remaining third. It will not be necessary for us to here decide whether the Legislature can discriminate in fixing the salaries of circuit judges, because no discrimination in the amount of the salary against the judge of that circuit is made, for the act expressly provides that he shall be paid the same salary provided by law for the circuit judges throughout the State. The distinction, or discrimination, if any exists, consists in the manner of paying the salary. Can the Legislature impose upon Garland County the burden of paying this salary? Section 5 of article 16 of the Constitution provides that "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State." Section 28 of article 7 provides that "The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case, that may be necessary to the internal improvement and local concerns of the respective counties * * *." Section 30 of the same article

provides: "The justices of the peace of each county shall sit with and assist the county judge in levying the county taxes, and in making appropriations for the expenses of the county in the manner to be prescribed by law; and the county judge, together with a majority of said justices, shall constitute a quorum for such purposes; and in the absence of the county judge a majority of the justices of the peace may constitute the court who shall elect one of their number to preside. * * *"

The quorum court, at its annual meeting, makes the appropriations for the expenses of the county, and the order in which, and the purposes for which, these appropriations may be made is provided by section 1499, Kirby's Digest. And section 1500 of Kirby's Digest provides that the total amount of these appropriations for the various purposes shall not exceed 90 per cent of the taxes levied for that year. May this levying or quorum court for Garland County make an appropriation to pay in part the salary of the judge of the circuit of which it is a part? We think this can not be done, if this salary is a part of the expense of administration of the State Government.

A similar question arose in the case of the *County of Shelby* v. *The Six Judges*, reported in 3 Shannon's Tennessee Cases, page 508. That was a case which was well considered, and in which Justice McFarland delivered the opinion of the court, and in which Justice Freeman delivered a concurring opinion, and Chief Justice Nicholson delivered a dissenting opinion. The questions there decided were again raised in the case of *Colbert* v. *Bond* and *Glisson* v. *Calloway,* reported in 110 Tenn. 370, 75 S. W. 1061, and were again fully considered, and in the opinion there delivered by Justice Shields, the court unanimously reaffirmed the opinion of the majority of the court in the case of *The Six Judges*. The facts in that case were that an act was passed providing for the payment of the salaries of the judges and chancellors of the several courts of Shelby County, and this act provided "that the salaries of the judges and chancellors of

the several courts established by this act shall be the same as for circuit judges and chancellors, as established by law, each to be paid by the State as other judges and chancellors are paid, provided that the county court of Shelby County may appropriate a sum sufficient to increase salaries of said judges and chancellors not exceeding two thousand dollars each, additional thereto.'' In passing upon the validity of that act of the Legislature, among other things, it was there said, ''Is the eleventh section of the act of 1869, in regard to allowing the county court to appropriate a sum not exceeding two thousand dollars to increase the salaries in violation of the Constitution? Did the Legislature have authority to delegate to the county court the power to increase the salaries of the judges, and to levy a tax to pay the appropriation? We think not. By the provisions of the Constitution, judges are to receive compensation for their services to be ascertained by law. Art. 6, § 7. The law ascertaining this compensation must be enacted by the Legislature, the only law-making power. This law-making power can not be delegated to any other body. * * * We are of the opinion that the county court had no power to levy a tax to pay the sums appropriated. The power of taxation is the legislative power, and this, by the Constitution, is vested in the General Assembly. They can delegate this power only to the extent authorized by the twenty-ninth section of article 2. This is, the Legislature shall have power to authorize the several counties and incorporated towns to impose taxes for county and corporation purposes in such manner as shall be prescribed by law.''

''We are of opinion that the courts must determine whether or not the purpose for which the county may be directed by the Legislature to levy a tax is a county purpose, and if it be not a county purpose, the law to that extent must be declared void. If we hold that the Legislature are the exclusive judges of whether or not the purpose be a county purpose, this restriction of the Constitution might as well have been omitted, and the power

given to the Legislature to authorize the counties to impose taxes without limit. It is the province of the court to decide when the legislative department has violated constitutional restrictions.''

''We will not undertake to define a county purpose, further than to say we think this is not. Judges are officers of the State whose salaries are fixed by law, and paid out of the State treasury. We do not think the judges of Shelby County are any exception. * * * It is no doubt true that the people of Shelby County derive more direct benefit from the services of these judges than the people of the State at large, but this is also to some extent true in regard to the other judges of the State with respect to the counties in which they hold court. It is to our minds clear that the 'county purpose' referred to in the Constitution means some purpose peculiarly within the province, as distinguished from those general purposes left to the State at large—such, for instance, as for building bridges, courthouses, jails, taking care of the poor, making public roads, etc. * * *''

''It is true some of these county purposes, such as building courthouses and jails inures equally to the benefit of the State, but it is well understood that these things are provided for by the county. We think that the purpose can not, in the sense of the Constitution, be both a State and county purpose. It must be one or the other. It is either the province of the State or county to pay the salary of the judges, but not the business of both. If the county of Shelby pays her own judges, the other counties ought to do the same, but to require that county to pay the salaries, or any part of the salaries (of the judges) holding her courts, and at the same time compel the people of that county to bear their part of the paying all the other judges of the State, as would be, the result would be unjust. It may be said that the county consents, but this is not so unless the county court has the power to bind the people by its action in this regard, which we think it had not.''

We have quoted thus extensively from this opinion,

because its reasoning applies to the case under consideration. A strong concurring opinion in the Tennessee case was written by Justice Freeman, in which he supported the majority view that Shelby County could not be required or permitted to pay any part of the salaries of the judges of the circuit court sitting in that county, and among other things, he said: "In view of these principles, we think it clear that a judge of court established under the Constitution of the State as a repository or part of its judicial power, required by the Constitution to leave a fixed salary to be ascertained by law, can never be held to be a county officer in any constitutional sense, nor his salary a charge upon the county treasury, as a county purpose, for which the particular locality can be taxed by its county court. These judges are State judges, and as such, their salary must be paid by the State, and not by the county, whose judges they are not. * * * The judiciary of the State is one of the departments of the State Government, organized for the whole State, provided for in the Constitution, and a salary required to be ascertained and fixed by law, and therefore is not a local institution, but a State institution, for which the State must provide. It makes no part of the peculiar organization of a county, and is not one of the interests confided to the management and control of the county, for which the county court is authorized to provide. Therefore, its support can not be charged on the county, but is a burden on the State alone."

These Tennessee cases were cited and approved by the Supreme Court of Georgia in the case of *Clark County Treasurer* v. *Hammond,* 68 S. E. 600. In that case the facts were that the Legislature of that State had passed an act fixing the salary of judges of the superior courts in the judicial circuits having therein a city with a population of not less than 34,000 inhabitants, according to the last census, and providing that in all such circuits the judges should have a certain additional compensation to be paid by the county having such population. The Constitution of that State contained the following

provisions in regard to certain salaries: "The judges of the Supreme Court shall have out of the treasury of the State a salary not to exceed $3,000 per annum; the judge of the superior court shall have a salary not to exceed $2,000 per annum; the Attorney General shall have a salary not to exceed $2,000 per annum, and the solicitor generals, each, shall have a salary not to exceed $250 per annum; but the Attorney General shall not have any fee or perquisite in any case arising after the adoption of this Constitution; but the provisions of this section shall not affect the salaries of those now in office."

It was contended in this Georgia case that the limitation that the salaries named should be paid out of the treasury of the State, referred only to the Supreme Court judges, and such is the letter of that Constitution. But the court reviewed the legislation of that State on the subject of judicial salaries, and, applying the maxim *noscitur a sociis,* held that the limitation that the salaries be paid out of the treasury of the State applied to all the officers there named. And the opinion in that case concluded with the statement that "under a proper construction of the Constitution, the salaries of the judges of the superior court are payable exclusively from the treasury of the State, and so much of the acts of 1904, as amended by the subsequent acts of 1905-1906 hereinbefore mentioned as purports to authorize such salaries to be supplemented by funds from the county treasuries, is void."

The section of our Constitution set out above which provides for the salary of circuit judges also provides for the salary of the Governor, Supreme Court judges, and the other State officers, whose salary could only be paid out of the State treasury, and other sections provide for the county officers and their compensation; and we think the section on that subject above set out, limits the payment of judicial salaries to the revenue of the State.

No other county in the State is called upon to bear any part of the burden of the salary of a circuit judge, and we think this burden has been imposed upon Garland

County against the provision of the Constitution providing for uniformity of taxation. Judge Cooley, in his work on Taxation, page 227, says: "It can therefore be stated with emphasis that the burden of a tax must be made to rest upon the State at large, or upon any particular district of the State, according as the purpose for which it is levied is of general concern to the whole State, or, on the other hand, pertains only to the particular district. A State purpose must be accomplished by State taxation, a county purpose by county taxation, or a public purpose for any inferior district by taxation of such district. This is not only just, but it is essential." It will be observed that the act creating this Eighteenth Circuit imposed two-thirds of the salary of this judge upon Garland County, and wholly exempts Montgomery, the other county composing the circuit, from any part of this burden.

If the proviso requiring Garland County to assume the payment of two-thirds of the salary of the judge of that circuit is unconstitutional and void, what becomes of the act? Does that fact render the whole act void? The rule in such cases has been stated by Judge Cooley in his work on Constitutional Limitations to be as follows: "* * * Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in the subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it can not be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and

capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.'' Cooley's Constitutional Limitations (6 ed.), page 210. This rule has been followed in innumerable cases in the various courts, and by this court in the following cases: *L. R. & Fort Smith Rd. Co.* v. *Worthen,* 46 Ark. 329; *State* v. *Marsh,* 37 Ark. 356; *State* v. *Deschamp,* 53 Ark. 490; *Cribbs* v. *Benedict,* 64 Ark. 555; *Wells Fargo & Co.* v. *Crawford County,* 63 Ark. 576.

Will the act creating this district stand this test? If this act is not valid, then Garland and Montgomery counties are left without any provision for a circuit court in those counties, and the prosecuting attorney and circuit judge of that circuit are officers *de facto,* and not *de jure.* We know from the Acts of the General Assembly of the year 1911, passed at the same session of the Legislature which created the Eighteenth Circuit, but at a later date of that session, that the Legislature recognized the dismemberment of the Seventh Judicial Circuit, of which Garland County had formerly been a part, for the Legislature rearranged the time for holding the courts of the counties of Hot Spring, Grant and Saline, which were left remaining in the Seventh Circuit, in such a way that

those courts conflict with the terms of court provided for in Garland County by the act under question. Such a purpose is not to be ascribed to the Legislature, where that purpose is not apparent, and will not be done in this case because we have an act which is full, complete and unambiguous in all of its terms and provisions. To this act is added a proviso which is invalid, and we think it more compatible with the legislative will to hold this proviso invalid, than to hold that the Legislature of the State has left two counties without a circuit court.

We are not unmindful of the fact that the Legislature at its 1913 session appropriated "for the salary of twenty-one circuit judges $122,000." We know by calculation that this appropriation is equivalent to $61,000 for each year, and that that sum would pay the full salary of twenty circuit judges for one year, and leave an excess of $1,000. This may indicate that the Legislature anticipated that Garland County would annually appropriate two thousand dollars in payment of the salary of the judge of that circuit. But we have quoted the language of the Legislature in making this appropriation, and, there is nothing in that language which excludes the judge of the Eighteenth Circuit from participating in this fund, and this appropriation has not been exhausted.

Section 3142 of Kirby's Digest reads as follows:

"In all cases of accounts audited and allowed against the State, and in all cases of grants, salaries and expenses allowed by law, the Auditor shall draw warrants upon the treasury for the amount due, in the following form: (Here follows form.) And mandamus will lie to compel an Auditor to draw a warrant for an officer's salary. *Byrd* v. *Conway,* 5 Ark. 436; *Black* v. *Auditor,* 26 Ark. 237; *Danley* v. *Whiteley,* 14 Ark. 687; *Jobe* v. *Caldwell,* 93 Ark. 503; *Jobe* v. *Caldwell,* 99 Ark. 25; 26 Cyc., p. 235, and cases cited.

The judgment of the circuit court below is therefore reversed, and the cause will be remanded with directions to the court below to make its appropriate order directing the Auditor of this State to issue appellant his war-

rant in the sum of $250 for his salary for the month ending October 31, 1913.

McCULLOCH, C. J., (dissenting).   I agree to all that part of the opinion which holds that appellant is entitled to the salary prescribed by statute.   The Legislature has not discriminated against him, but has, in unqualified language, fixed his salary at the same amount as that received by other circuit judges in the State.   My opinion, however, is that that part of the statute which provides for payment of a portion of the salary out of the county treasury is valid.   There is nothing in the Constitution which prohibits it.   Circuit judges and prosecuting attorneys are undoubtedly officers of the State.   *Griffin* v. *Rhoton,* 85 Ark. 89.   But they serve in local subdivisions, the boundaries of which are fixed by the Legislature in order to conform to the necessities of judicial administration in the localities.   I find nothing in the Constitution which prevents the Legislature from making all the salaries of circuit judges and prosecuting attorneys payable by the counties composing the districts.   This is not violative of the clause of the Constitution requiring uniformity in taxation, for the Legislature is presumed to have regard for that clause in prescribing the boundaries of the districts and the payment of salaries.   In other words, though the circuit judges are officers of the State, the expenses of their salaries, like other expenses of maintaining the courts, may be imposed upon the counties.   There is nothing in the Constitution which defines county expenses, and the definition is left largely to the Legislature.   In the exercise of that power, the lawmakers have seen fit to impose all the expenses of maintaining the courts and enforcing the criminal laws of the State upon the counties in which the courts are held. The power of the Legislature in that respect has never been challenged.

The majority base their opinion upon a decision of the Supreme Court of Tennessee which was rendered by a divided court.

The Georgia case cited in the opinion has no force,

because it is based upon a provision of the Constitution which provides that the payment of salaries of judges shall be made out of the State treasury. No such provision is found in the Constitution of this State.

I think the dissenting opinion of Chief Justice Nicholson of the Tennessee Supreme Court expresses the sounder view and meets my approval. He says:

"The Constitution does not define what are county purposes, but it recognizes county, as political divisions of the territory of the State, essential in Republican Government; and the duties imposed on them are a part of the proper and necessary burden which the citizens must assume in the process of self-government. The expenses of securing a proper administration of justice, civilly and criminally, are incurred by the counties, and taxes imposed therefor. The relation between the State Government and the county government is so intimate that the distinction between State purposes and county purposes can not be defined with accuracy, except in the cases in which it is done by the Legislature. Courthouses are county purposes, and yet they are essential to State purposes in the administration of justice. The law treats the administration of justice by the circuit judges and chancellors as a State purpose, in some respects, and as a county purpose in other respects. The State pays the expenses of criminal prosecution in one class of cases, and the counties in another. The administration of justice by the justices of the peace in their civil districts and in the county courts is a county purpose, but it is no less a State purpose as part of the machinery of self-government. The establishment of courts, civil and criminal, in the several counties, is not less a county than a State purpose. There is nothing in the Constitution nor in the nature and character of the relation between the county and the State which forbids the Legislature to declare the establishment and maintenance of the necessary courts in a county, a county purpose, and as such to authorize the imposition of taxes to pay the expense thereof."

The Supreme Court of Missouri, in an early case, de-

cided that it was within the power of the Legislature to impose part of the salaries of the St. Louis judges upon the county, and that the provisions of the Constitution with respect to taxation were not violated thereby. *Hamilton* v. *St. Louis County Court*, 15 Mo. 1.

The Virginia Court of Appeals, in *Holliday* v. *Auditor*, 77 Va. 425, held that the salary of a judge of the chancery court of the city of Richmond was payable out of the city treasury under a statute which provided that "the judges of the city and corporation courts of this Commonwealth shall be paid out of the treasuries of their respective corporations," rather than out of the State treasury under the statute which provided that "salaries of all the judges should be paid quarterly out of the treasury of the State."

I think the Legislature possessed the power to pass this statute imposing a portion of the salary of the circuit judge on the counties of Garland and Montgomery composing the circuit. It is presumed that the Legislature inquired into the conditions there and considered that a proper adjustment of the burdens of taxation. For that reason, I think the circuit court was correct in refusing to award the writ of mandamus compelling the Auditor of State to issue a warrant to appellant.