## STATE USE AGRICULTURAL SCHOOL DISTRICT No. 1 *v.* CRAIGHEAD COUNTY.

## Opinion delivered July 6, 1914.

1.   COUNTY FUNDS—COUNTY COURTS—COUNTY EXPENDITURES.—Under the Constitution, art. 7, § § 28 and 30, Const., 1874, the county and quorum courts have exclusive jurisdiction in all matters relating to the levying of county taxes and the making of appropriations for the expenses of the county, and the disbursement of money for county purposes.

2.   COUNTIES—LEGISLATIVE AUTHORITY.—The Legislature has no authority under the Constitution to consider the merits of the various local affairs of the counties of the State.

3.   COUNTIES—COUNTY FUNDS—LEGISLATIVE CONTROL.—The Legislature may enumerate, or limit, the purposes for which a county may expend its revenues, but it can not itself make appropriations of county funds.

4.   COUNTIES—APPROPRIATION BY QUORUM COURT—VALIDATING ACT—VALIDITY.—The act of 1911, p. 1005, No. 352, Special Acts, validating an appropriation made by the quorum court, and directing the county judge to issue warrants in pursuance thereof, *held,* beyond the legislative authority, and does not validate the said appropriation.

5.   AGRICULTURAL SCHOOLS—COUNTY PURPOSE—STATE INSTITUTIONS.—The
     Agricultural school of the First District, located in the city of
     Jonesboro, is a State, and not a county institution, and its support
     can not be a county purpose.

Appeal from Craighead Circuit Court; *J. F. Gaut-
ney,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellant filed in the Craighead County Court a
petition setting up that at the October term, 1910, the
quorum court of that county had appropriated the sum
of $10,000 to secure the location of one of the Agricultural
schools provided for by Act No. 100 of the Acts of the
General Assembly of 1909; that the trustees of said school
had accepted the offer made to secure the location of the
school in that county, and had located the school at Jones-
boro in said county, and had purchased a large farm, and
had erected buildings thereon, and that the school was
being maintained and operated for the purpose of educat-
ing the citizens of Craighead County, and other counties,
in the science of agriculture and the domestic arts and
sciences, and by reason of the location of said school in
said county, the inhabitants thereof had gained a special
benefit.   The claim was duly verified and a copy of the
order of the quorum court making the appropriation was
attached as an exhibit.   The claim was rejected by the
county court, and an appeal was taken to the circuit court,
where, upon the trial of the cause, the appellant intro-
duced the claim, and the appropriation of the quorum
court, and offered to make the following proof in support
of the claim.   That the board of trustees of the school
pursuant to the authority vested in them by Act No. 100
of the General Assembly of 1909, advertised they would
locate the institution in the county paying the largest
bonus therefor, taking into consideration conditions as
to health, soil, etc., and after receiving donations from
the citizens of Craighead County, the county supple-
mented the donations through its quorum court by appro-
priating the sum of $10,000 out of its revenues, which said
board of trustees, after due consideration, accepted, and

voted to locate said agricultural school at or near the city of Jonesboro, and thereafter purchased a farm, erected buildings, and is now maintaining an institution as provided for by the said act of the Legislature, and these statements at the time were admitted to be true. Appellant further offered to prove that the location of said institution in the county was an internal improvement of local concern to the county in that the institution would be of greater benefit to the people of Craighead County than to the people of other counties, since it established an educational institution at the doors of the citizens of that county, and at less cost and less effort than the student body of other counties. Appellant further offered to show that the people of Craighead County derived more benefit than the people from other counties for the reason that the school is more accessible to the people of that county, and could be attended at less cost, and that the appropriation by the State for the maintenance of the said institution is largely spent in that county. This offer was denied and exceptions were saved.

The General Assembly at its 1911 session passed an act numbered 352, which is found at page 1005 of the Special and Private Acts of the session of that year. This act was entitled "An Act to Validate the Action of the Quorum Courts of Craighead, Mississippi, Jackson, Cross and Poinsett Counties in Making Appropriations to secure the Location and for the Establishment of the State Agricultural School for the First District." This act contained a preamble reciting that the quorum courts of the counties named had at their regular terms, on the first Monday in October, 1910, appropriated certain moneys out of the general revenue funds of their respective counties to secure the establishment of this school at Jonesboro, and recited that the board of trustees, relying upon the appropriations, had so located the school. This act declared the action of the quorum courts in making said appropriations, to be valid and binding, and the county judges of those counties were commanded, upon the demand of the board of trustees of said school, to make an

order directing the issuance of warrants for the amounts appropriated, on the treasurer of the respective counties for the purpose of paying said appropriations.

The court below made a general finding in favor of the county and disallowed the claim, and this appeal has been duly prosecuted from that judgment.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The claim of appellant should have been allowed. The location of the school was an internal improvement and of local concern and benefit to the county. The quorum court had authority to make the donation and appropriation. Acts 1911, p. 1005. Many courts of other States have passed on the question. The leading case is 12 Allen 500-507-8; 47 N. Y. 608; 101 U. S. 407; 76 Ill. 455; 84 *Id.* 544; 37 Ind. 155-162; 50 Mich. 7; 19 Pa. St. 258; 92 U. S. 312; 94 *Id.* 310; 113 *Id.* 7; 111 *Id.* 363.

2. This court has always maintained the sovereignty of the Legislature over counties which are merely political subdivisions of the State. 4 Ark. 473-486; 27 *Id.* 614; 28 *Id.* 317-328; 32 *Id.* 51; 33 *Id.* 497; 37 *Id.* 339; 56 *Id.* 148. Art. 7, § 28, Const., is certainly very broad.

*Lamb & Caraway,* for appellee.

1. The money of the county can not lawfully be appropriated or paid to appellant.

(a) The agricultural schools are State institutions, the entire burden of establishing and maintaining which devolves upon the State. The revenue to be expended for this purpose is to be derived from a tax imposed upon "all property subject to taxation," and shall be "equal and uniform throughout the State." Const. 1874, art. 16, § 5.

(b) The attempt to appropriate money of the county to the payment of this claim is also in violation of Constitution, art. 7, § § 28 and 30. 33 Ark. Law Rep. 225; 21 Ark. 40; 1 Cooley on Taxation, 187; 36 N. E. (Ohio) 472; 49 N. E. (Ohio) 477; 60 L. R. A. (Fla.) 539; 58 N. E. (Ind.) 1037; 61 Miss. 283.

(c)   The appropriation is forbidden also by art. 12, § 5, Const. 32 Ark. 580; 50 Pa. St. 173.   These agricultural schools are "institutions" within the meaning of the above constitutional provision.   4 Words & Phrases, tit. "Institutions;"   Webster's   Unabridged Dict.; 22 Cyc. 1373.

(d)   It is conceded that Craighead County can not tax itself or be taxed for the location of an institution in some other county, yet the act under which appellant seeks to impose the burden upon that county, also undertakes to validate a similar attempt in other counties. Notwithstanding counsel's effort to the contrary, there is nothing in the resolution to the effect that the appropriation is made only upon condition that the school be located in Craighead County.   So far as its language is concerned, the school could as well have been located in some other county, and the appropriation have been as valid. 57 Ark. 554; 52 Ark. 547; 42 N. W. 31; 9 Minn. 258-260-2; 9 Heisk. (Tenn.) 349-356-7; 17 Atl. 388; 52 N. W. (Mich.) 468; 39 N. J. L. 576; 20 S. W. (Tex.) 81.

2.   The act of May 30, 1911, is invalid.   The Legislature can confer authority upon local taxing bodies to such extent only as the Constitution permits, and no more, or, perhaps, it would be more correct to say, to such extent as is not prohibited by the Constitution.

SMITH, J., (after stating the facts).   Provision was made in our present Constitution for the management of the internal affairs of the counties by the creation of county and quorum courts for that purpose.   Section 28 of article 7, of the Constitution of 1874, provides: "The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties.   The county court shall be held by one judge, except in cases otherwise herein provided."

Section 30 of article 7 of the Constitution provides for the levy of taxes and the making of appropriations for the expenses of the county by the quorum court.

(1-2-3) The Constitution contemplates that these two courts shall have exclusive jurisdiction in all matters relating to the levying of county taxes, and the making of appropriations for the expenses of the county, and the disbursement of money for county purposes. The Legislature would be unduly burdened, if it was required to consider the merits of the various local affairs of the respective counties, and no such authority was given it. It is within the province of the Legislature to determine the various purposes for which, and the order in which, the quorum court may make appropriations for the various county purposes, and the Legislature has done this in section 1499 of Kirby's Digest. This section is subject to the Legislature's right to amend as it may deem proper to do; but while it may enumerate, or limit, those purposes for which the county may expend its revenues, it can not itself make these appropriations, otherwise a conflict of authority and of action might arise between the quorum courts and the Legislature, and the Constitution has undertaken to avoid this condition by vesting the exclusive authority to make these appropriations in the courts of the counties.

(4-5) We think the act of the Legislature above mentioned validating the appropriation and directing the county judge of Craighead County to make an order, directing the issuance of warrants of that county, is ineffective, and does not validate the action of the quorum court in making this appropriation. If the Legislature had the authority to direct the county judge to issue this warrant, pursuant to the action of the quorum court in making this appropriation, then it would have had the right to make this appropriation in the first instance, independent of the action of the quorum court, and as we have said, no such authority is vested in the Legislature. It may be true the Legislature could authorize the county court of any particular county to establish a school, or

other institution, to respond to the particular needs of that county, and might authorize a quorum court to make the necessary appropriations for its support and maintenance. But we are not called upon here to decide whether this could be done or not, for this is not what the Legislature here undertook to do. The agricultural school of the First District, located in the city of Jonesboro, is in no sense an institution of that county, and its support can not be a county purpose. A study of the act authorizing the establishment of this school makes it entirely clear that this school is a State institution. No officer of Craighead or any other county as such, has any voice in its control or management. The trustees vested with the control and management of the institution are appointed by the Governor of the State, subject to the concurrence and approval of the Senate, and any vacancy which may occur on the board of trustees is similarly filled, and these trustees have the entire control and management of the institution, and they employ the teachers and prescribe the course of study. The State has reserved to itself the right to complete control over this institution, and has assumed the burden of its maintenance, and appropriations were made therefor, not only in the act creating the district school, but in subsequent acts of the General Assembly. It is true the institution is located in Craighead County; but it was required that the school be located in some one of the counties constituting the First Agricultural School District, and Craighead was one of those counties, and all of those counties are parts of the State. A discretion was vested in the trustees, in the location of this institution, and they were directed to consider inducements which should be offered for its location; but the inducement contemplated was, of course, only such as might be lawfully made. It may be true, as appellant offered to prove, that Craighead County will derive certain benefits which will not be enjoyed by other counties of the State in that district, because of the location of the school in that county. Such institution located there is more accessible to the people

of that county; but such benefit does not deprive the institution of its character as a State institution. The act creating this institution necessarily contemplated that it was desirable that the institute should have as large attendance as possible, and it may be true of this institution, as it is of most other institutes of learning, that it will be more generally patronized by residents of territory immediately adjacent to it, than by citizens of territory more remote. But no right so to patronize and enjoy the benefits of the institution are conferred exclusively upon the people of Craighead County. Upon the contrary, section 9 of the original act provides that the tuition of the school shall be free, and that the trustees may limit the number of students from time to time, according to the capacity and means of the institution, and shall make rules of admission so as to equalize as near as practicable the privileges of the school among the counties, according to population. It is thus seen that if Craighead County was permitted to make this donation, its citizens would acquire no greater rights to the use of the facilities of the school, than those enjoyed by the citizens of other counties.

In 1899, the Legislature of the State of Florida enacted a law in regard to the militia of that State. It contained the following provision: "It shall be the duty of the board of county commissioners in each county in which there is a company, or battery of State troops, to provide each company or battery with an armory suitable for its meetings and drills and the safe storage of arms and equipments." In a proceeding to compel the commissioners of a county in that State to erect an armory, it was contended this act was void because it violated the provisions of section 5 of article 9 of the Constitution of that State, which reads as follows: "The Legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purposes, and all property shall be taxed upon the principles established for State taxation. But the cities and incor-

porated towns shall make their own assessments for municipal purposes upon the property within their limits." * * * The Supreme Court of that State, in the case of *State* ex rel. *Milton* v. *Dickenson and others,* 60 L. R. A. 539, 44 Fla. 623, held this act to be unconstitutional, and in so doing, said: "No body of the State militia, in other words, has any prescribed function or duty to perform exclusively in or for any particular county in the State, that it is not under equal obligation to perform in or for any other county of the State wherever the exigency may arise for its exercise. And whenever and wherever it is so called upon to act, it is there as the representative of the State's supreme sovereignty, and not as that of the county in which it acts. The place of residence of its individual members has nothing whatever to do with fixing its status, either as a State or county institution. The conclusion reached is that the militia of the State, and every part thereof, is essentially and necessarily a State institution, or, rather, an arm of the State Government, resort to which can only be had upon the failure of all other governmental authority; and that it can be, and should be, in the very nature of things, wielded only by the supreme sovereign power of the State; that it is in no sense such a county institution or establishment as that any particular county can exclusively be either authorized, or required, to impose taxes for its, or any part of its, maintenance. It is essentially a State institution, taxation for the support and maintenance of which can be imposed only by the State, and, when so imposed, such taxation is required by paragraph 1, of article 9, of our Constitution, to be at a uniform and equal rate upon all the taxable property throughout the State, and can not for such purpose be confined to or burdened upon the property in any one county, to the exclusion of any or all the other counties of the State."

Among other cases cited in that opinion in support of the language which we have quoted is the case of *Hutchinson* v. *Ozark Land Co.,* 57 Ark. 554. This Hutchinson case, *supra,* involved the validity of a tax sale where

the county court of Clay County, which county is divided into two judicial districts, had levied a higher tax for county general purposes in one district than in the other. Because of this inequality, that sale was held void, and Justice MANSFIELD there said: "If the taxes levied in the two judicial districts of Clay County were not county taxes within the meaning of the Constitution, then the county court has no power to levy them, and they were for that reason illegal. But if they were levied for county purposes, that made them county taxes, and the nature of such taxes required them to be imposed by a levy applicable to the entire county."

The validity of the appropriation of the quorum court of Craighead County depends upon the decision of the question whether or not the location and maintenance of this school was a county purpose, and a majority of the court are of the opinion that it was not; but that the school is one of the institutions of the State, and as such, the burden not only of its maintenance, but of its erection, must be borne by the State at large. *Cotham* v. *Coffman,* 111 Ark. 108; 163 S. W. 1183.

The judgment of the court below is therefore affirmed.

McCULLOCH, C. J., and WOOD, J., (dissenting). It should be borne in mind that the Constitution of the State is not a grant nor an enumeration of the powers, but is merely a limitation, in so far as it is expressed, upon the legislative power. The Legislature is sovereign except as to the limitations expressed in the Constitution or necessarily implied therefrom.

In the instance now under consideration, the Legislature has not attempted to make a direct appropriation of county funds, but it has merely ratified or legalized what the county court had previously done, the appropriations made by the county court in regular session. And, conceding that there was no statute to authorize the appropriations at the time, the Legislature had power to ratify.

The majority hold that the agricultural school is a State institution, and that the Legislature had no power to localize it or to determine that any part of the benefits were local, so as to place the expenses or a portion of it on the county. With this conclusion, we are unable to agree. There is nothing in the Constitution which prevents the Legislature from classifying matters which may be the subject of local or county expenses. The numerous authorities cited in the brief of appellant abundantly sustain that proposition. The Legislature could, we think, extend authority to the county to use funds for the establishment of an agricultural school; and that being true, it could determine that a State institution was of sufficient local benefit to be treated as the subject-matter of appropriation of county funds for county purposes. The provision of the Constitution conferring jurisdiction upon the county court in matters "relating to county taxes, * * * the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties," does not limit the power of the Legislature with respect to determining what shall constitute internal improvements. It does not take away the power of the Legislature to determine what shall constitute, in whole or in part, a matter of local concern. The county court is as much subject to the legislative will as any other functionary, except to the extent that the control may be limited by the express terms of the Constitution.

It seems clear to us that the Legislature has determined that the agricultural school is a matter of local concern in the county, to the extent of the appropriations made by the county court, and that it was within the power of the Legislature to do this.