PHILLIPS COUNTY *v.* ARKANSAS STATE PENITENTIARY.

Opinion delivered January 29, 1923.

1. CONSTITUTIONAL LAW—POWER OF LEGISLATURE.—The Legislature may prescribe the form in which an action for the benefit of the State may be maintained.

2. PRISONS—LIABILITY OF COUNTY FOR MAINTENANCE OF CONDEMNED PRISONERS.—Under General Acts 1921, p. 50, § 11, declaring the purpose of the statute to confer upon the commissioners "the management and operation of the penitentiary," such commissioners were authorized to sue a county for the collection of money due under § 8, providing that the county from which any person is brought for confinement in the death chamber for electrocution shall pay to the penitentiary $1 for each day each such person is so confined, and $25 for the electrocution; such expense being a part of the expense of enforcing the criminal laws, and not a contribution toward the maintenance of the penitentiary as a State institution.

3. PRISONS—MAINTENANCE OF CONDEMNED PRISONERS—JURISDICTION OF COUNTY COURT.—General Acts 1921, p. 50, requiring counties to pay the State Penitentiary for maintenance and electrocution of condemned prisoners, is not an evasion of the jurisdiction of the county court in fixing the amount to be paid by the county as the expense of keeping condemned convicts and executing the sentence of the court.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

*W. G. Dinning,* for appellant.

1. The Penitentiary Commission has no right or authority to bring or maintain for and in behalf of the

State, for the recovery of money alleged to be due the State.

2. Act No. 44, approved February 1, 1921, under which this claim is prosecuted, is unconstitutional and void, as in violation of §§ 28 and 30, art. 7, and of § 5, art. 12, and § 5, art. 16, Constitution. 114 Ark. 278; 111 Ark. 108; 125 Ark. 350; 140 Ark. 398.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

1. The Arkansas Penitentiary Commission had the right to bring and maintain the action. C. & M. Digest, §§ 1098, 1092; §§ 1 and 8 of the Act; 88 Ark. 433; 97 Ark. 374; 101 Ark. 469; 131 Ark. 557.

2. The act is not in contravention of §§ 28 and 30, art. 7, or § 5, art. 12, or § 5, art. 16, of the Constitution. 89 Ark. 460; 103 Ark. 452; 104 Ark. 425; 113 Ark. 439.

McCULLOCH, C. J. The Board of Commissioners of the State Penitentiary filed for allowance in the county court of Phillips County a verified account against the county for the keep of certain prisoners held in the State Penitentiary under conviction of capital offenses. The statute under which the right to recover from the county is asserted is a section of act No. 44 of the General Assembly of 1921 (General Acts, 1921, p. 50), which reads as follows:

"Section 8. The county from which any person is brought for confinement in the death-chamber and for electrocution shall pay to the penitentiary the sum of one dollar ($1) per day for each day each such person is so confined, and shall pay twenty-five dollars ($25) for the electrocution of each such person."

The Attorney General appeared on behalf of the commissioners in the prosecution of the claim, which was disallowed by the county court, and an appeal was duly prosecuted to the circuit court, where there was a trial anew and a judgment against the county.

The case was tried in the circuit court upon an agreed statement of facts showing that the convicts mentioned

in the claim were sent to the penitentiary under sentence of death, and were held there for that purpose a certain number of days, sufficient to make out the amount of the claim as provided in the statute.

It is contended, in the first place, that the commissioners of the State Penitentiary have no right to maintain a suit for the collection of the amount.

It was within the power of the Legislature to prescribe the form in which an action for the benefit of the State may be maintained, and the language adopted by the lawmakers in this instance clearly indicates their purpose to authorize a claim to be filed and prosecuted in the name of the Penitentiary Commissioners. The statute provides that the counties of the State shall pay the amount named "to the penitentiary," and a subsequent section of the same statute (section 11) declares the purpose of the statute to confer upon the Commissioners "the management and operation of the penitentiary." This clearly shows that all matters relating to the management of the penitentiary are placed in the hands of this board, and that it is necessarily their duty to present and prosecute claims which accrue under the statute. The question whether or not the money is to be paid into the State treasury is another matter altogether, and does not arise at this stage of the proceedings, and the only question we have now to deal with is whether or not the suit for the recovery may be maintained in the name of the Commissioners of the State Penitentiary.

The suit is, in effect, one on behalf of the State, and the Attorney General appeared not only here, but in the trial below, to prosecute the case for the benefit of the State. We are of the opinion therefore that the claim has been properly filed and prosecuted.

The principal contention here is that the statute imposing upon a county the expense of keeping prisoners under death sentence is void because it is an expense of the maintenance of the State Penitentiary, which the Legislature has no right to impose upon the counties.

Counsel for appellant rely upon the following cases in support of their contention: *Cotham* v. *Coffman,* 111 Ark. 108; *State use Agricultural School Dist. No. 1* v. *Craighead County,* 114 Ark. 278; *Fort Smith Dist. of Sebastian County* v. *Eberle,* 125 Ark. 350; *Dobbs* v. *Holland,* 140 Ark. 398.

Those cases merely establish the principle that the cost of paying salaries of State officers, or the expense of maintaining State institutions, cannot be imposed upon the counties. The expense imposed by the present statute is not, we think, a contribution towards a State institution, or towards the payment of the salaries of State officers, but is an expense in enforcing the criminal laws of the State, which has always been held to be a matter within the power of the lawmakers.

Prior to the year 1913, the cost and expense of the execution of a death sentence by hanging was imposed upon the county where the prosecution was had, but the General Assembly of that year enacted a statute changing the method of imposing the death penalty from hanging to electrocution. The statute provided that the superintendent of the State Penitentiary should provide a permanent death-chamber for the execution of the death sentence by electrocution, and that all persons sentenced to electrocution should immediately be conducted to the penitentiary and there kept until the imposition of the sentence or the reversal of the judgment. Acts 1913, p. 171, Crawford & Moses' Digest, § 3253 *et seq.*

There is no constitutional restriction upon the imposition of costs of prosecution, and it has always been held by this court that this was a matter regulated entirely by statute. *Lonoke County* v. *Reed,* 122 Ark. 111. This being true, the Legislature could have provided for electrocution of a convict by the sheriff of the county and at the expense of the county, as had theretofore been the law with respect to execution of sentence of death by hanging. The fact that the execution of the death sentence is within the walls of the State Penitentiary does

not make it any the less a part of the expense of the enforcement of the criminal laws. It is not a part of the maintenance of the State Penitentiary, but it is the expense of imposing the death penalty.

It has been decided by this court that the Legislature has no right to impose upon a county a contribution towards the salary of a State officer. *Cotham* v. *Coffman, supra; Dobbs* v. *Holland, supra.* But the court has also decided that a county may be required to pay the fees of the prosecuting attorney as a part of the cost of enforcing the criminal laws. *Phillips County* v. *Clayton,* 29 Ark. 246; *Lonoke County* v. *Reed, supra.* The distinction to be drawn from these cases is applicable in the present case, and justifies the conclusion that the requirement for the county to pay the amount estimated to be the cost of keeping prisoners held for execution is not, in effect, a requirement that the county shall contribute to the maintenance of the penitentiary as a State institution.

The statute constitutes no invasion of the jurisdiction of the county court in fixing the amount to be paid by the county as the expense of keeping the convicts and carrying out the sentence of the court. *Cain* v. *Woodruff County,* 89 Ark. 456; *Dobbs* v. *Holland, supra.*

This answers the contention of counsel with respect to the validity of the statute, and we are of the opinion that none of the attacks upon the validity of the statute are well founded.

The judgment is therefore affirmed.

Hart, J., (dissenting). From the beginning a State prison system of some sort has been adopted by statute in this State, and its management and operation has been placed in the hands of State officers or State boards and its maintenance has been at the expense of the State.

Formerly the State cared for all prisoners who were sentenced to be confined in the State Penitentiary, and it was made the duty of the sheriff of the various counties to imprison convicts sentenced to death until the date of

their execution and· to execute them. The statute also provided· that the expenses attending the imprisonment and execution of said convicts should be paid by the county. This was a valid statute; just as the Legislature could have passed a statute requiring each county to erect and maintain a county prison for the confinement of all its prisoners, whether they had committed felonies or misdemeanors.

Judge SMITH and myself are of the opinion, however, that the Legislature cannot establish a penitentiary under the management of a State board or State officers and give them the power and authority to imprison convicts sentenced to death until the date of their execution and to execute them, and at the same time place the cost thereof upon the various counties. If the State adopts the plan of bestowing upon the officers of the State Penitentiary the duty to confine prisoners sentenced to death in the State Penitentiary until the date of the execution and to execute them, the State must bear the expenses thereof, and the cost cannot be placed upon the counties.

On the other hand, the Legislature has the power to again place the execution of criminals condemned to death in the hands of county officers and to require such officers to care for the prisoners until the date of their execution, and in that event it might impose the costs upon the county.

In the instant case, however, the State has reserved to itself the right and power to execute prisoners sentenced to death and also imposes the duty upon the State officers to confine such prisoners in the State Penitentiary until the date of their execution.

The State Penitentiary is essentially and necessarily a State institution, and taxation for the support and maintenance of which, in whole or in part, cannot be imposed upon a single county, but must be borne by the whole State. The contrary view, in our judgment, is opposed to the principles decided in *State* v. *Craighead*

*County,* 114 Ark. 278, and *Cotham* v. *Coffman,* 111 Ark. 108.

In other words, the General Assembly may make the execution of condemned criminals, and their confinement for that purpose, a function of the county government, in which event the expense thereof would have to be borne by the county. On the other hand this duty might be imposed upon the State as a function of the State Government, in which event the expense thereof would have to be borne by the State. The controlling question here is which agency has the duty to perform, and it appears to us that the State through its General Assembly has assumed this duty, and, that being true, it follows that the expense thereof must be borne by the State.

The penitentiary is, without question, a State institution, and it has been made the function of the managers of that institution to confine and execute criminals who have been sentenced to death, and the State should therefore pay the operating expense, for such it is.

We perceive no difference in principle between imposing the expense on the counties and making the counties pay for feeding, housing, guarding and clothing or furnishing medical attention to the convicts from the respective counties, which would in effect apportion the cost of the operation of that institution against the different counties per capita, according to the number of convicts coming from the respective counties. And if this can be done in regard to the penitentiary, why may it not be done in the management of the eleemosynary institutions? And in what manner may it be determined how the expenses of government shall be borne if we depart from the principle settled in the cases cited, in both this and the majority opinion, of requiring the State to bear the expense of the State's government?

Therefore we respectfully dissent.