Newton County Republican Central Committee *v.* Clark.

5-1602                                        311 S. W. 2d 774

Opinion delivered March 31, 1958.

966

Ben C. Henley, for appellant.

Eugene W. Moore, for appellee.

Ed. F. McFADDIN, Associate Justice. This appeal requires consideration of Act No. 205 of the 1957 General Assembly entitled, "An Act to Amend the Election Laws of This State to Require Primary Elections in Certain Instances; to Repeal Conflictng Laws; and for Other Purposes". It is popularly called "The Compulsory Primary Act".[1]

The appellee Quinton Clark, as plaintiff, filed this action in the Newton Circuit Court against the defendants, Newton County Republican Central Committee and the named officers and members of said Committee. The complaint alleged:

"That plaintiff is a legal resident and qualified elector of Newton County, Arkansas, and qualified under the laws of Arkansas to seek and hold the office of County Representative in said County and State; that he is desirous of seeking the Republican nomination for County Representative in the General Assembly of Arkansas in the year 1958; that on the 27th day of February, 1958, pursuant to Act 205 of the 1957 Arkansas General Assembly and all other primary election laws now in effect, he tendered his proper corrupt practice pledge to the said Frank Cheatham and J. W. Waters, Chairman and Secretary respectively of the Newton County Republican Central Committee, and requested

---

[1] The Legislative records disclose that the Act No. 205 was S. B. 232 introduced by Senator Jones. The bill passed the Senate by a vote of 31 to 0; and passed the House by a vote of 68 to 6.

said committee to fix the fees incident to his filing as a candidate for said office in a Republican Primary election, as provided by Act 205 of 1957 and all other primary election laws pertaining thereto; that the defendants in their said capacities aforesaid, refused to accept his corrupt practice pledge and refused to set any filing fees for said office; and defendants refused to call a Republican Primary election in Newton County, Arkansas to ascertain the nominee for said office or any other office. That the plaintiff has no other remedy than to seek mandamus against the defendants directing the defendants to permit this plaintiff to qualify as a candidate for Representative in the Republican Primary election in Newton County, Arkansas as provided by law, and especially as provided by Act 205 of the 1957 General Assembly of Arkansas."

The prayer of the complaint was for a writ of mandamus to require the defendants to comply with said Act No. 205 and take all necessary steps for a Republican Primary election in Newton County so that the plaintiff might be a candidate in said primary. The defendants demurred to the complaint; the Circuit Court overruled the demurrer; the defendants stood on their demurrer; the Circuit Court ordered mandamus issued;[2] and the defendants excepted and prosecuted this appeal. We advanced the case and requested the Attorney General to file a brief *amicus curiae,* which has been filed and has proved helpful to the Court.

The Act No. 205 has five sections: Section 1 amends § 3-201 Ark. Stats.; Section 2 amends § 3-204 Ark. Stats.; Section 3 amends § 3-261 Ark. Stats.; Section 4 repeals § 3-266 Ark. Stats.; and Section 5 declares the purpose of the Act in this language:

"It is the purpose and intent of this Act to require all political parties desiring to nominate any person for United States Senate, United States House of Representatives, State, District, or County office, so

---

[2] Mandamus is specifically authorized in some instances. See § 3-222 Ark. Stats. and *Stock* v. *Harris,* 193 Ark. 114, 97 S. W. 2d 920.

that any such persons name shall appear on the general election ballot as a representative of that political party, to do so only by primary election; and to require such primary elections to be held at the same time and place, and qualified voters to cast but one ballot thereat for the candidates representing the party of his or her choice. Any provision in our election laws to the contrary is hereby repealed in its entirety to this extent.''

At the outset we emphasize that all other portions of the primary election laws (§§ 3-201 to 3-266) not amended or repealed by the Act No. 205 were in full force and effect when this Act was adopted, and they aid in the understanding and interpretation of the Act No. 205. It is one of the rules of statutory construction that new legislation must be construed with reference to existing legislation on the same subject. *Connelly* v. *Lawhon,* 180 Ark. 964, 23 S. W. 2d 990; and *Indian Bayou Dist. of Lonoke County* v. *Dickie,* 177 Ark. 728, 7 S. W. 2d 794. It is also well to reiterate what was said in *Adams* v. *Whittaker,* 210 Ark. 298, 195 S. W. 2d 634. We were there asked to declare void Act No. 107 of 1945 which required separate primaries for the selection of candidates for federal offices. It was urged that the Act was inconsistent as well as unconstitutional; and we said:

''We are, of course, not concerned with the wisdom or policy of the legislation as this is a question solely for the General Assembly. We may consider only the power of the General Assembly to enact the legislation. In the case of *Eagle* v. *Beard,* 33 Ark. 497, Justice Eakin said: 'Comity towards a co-ordinate department of the government forbids the discussion of matters of discretion, when the power is conceded.' The power to enact this statute exists unless in contravention of our own or the federal Constitution, and in passing upon that question every doubt must be resolved in favor of its validity.''

We have repeatedly said that the q u e s t i o n of the wisdom or expediency of a statute is for the Legislature alone. The mere fact that a statute may seem

to be more or less unreasonable or unwise does not justify a court in annulling it, as courts do not sit to supervise legislation. Courts do not make the law: they merely construe, apply, and interpret it. *Craig* v. *Flanagin*, 21 Ark. 319; *Ark. Stave Co.* v. *State*, 94 Ark. 27, 125 S. W. 1001, 27 L. R. A. N. S. 255, 140 A. S. R. 103; *Gates* v. *Hughson*, 186 Ark. 348, 53 S. W. 2d 581; and *McDonald* v. *Wasson*, 188 Ark. 782, 67 S. W. 2d 722. In the light of all of the foregoing background we come to the attacks here made on the Act No. 205. Appellants have three points in their brief which we list and consider.

I. *Appellants' First Point: "Said Act 205 is too vague and uncertain to be effective, and is void on that account".* We have a number of cases which recognize that a statute may be void because of uncertainty. *Jones* v. *Lawson*, 143 Ark. 83, 220 S. W. 311; and *Snow* v. *Riggs*, 172 Ark. 835, 290 S. W. 591. Appellants claim that the Act No. 205 falls within the scope of these cases and lists several attacks, which we identify by alphabetical listing.

A.  Appellants say: "Act 205 creates uncertainties as to whom is to be elected because of the conflicts expressed in Sections 1, 3, and 5. The 'offices' covered by the express definition of intent in Section 5 is in conflict with Section 3, and Section 3 is in conflict with Section 1 in that respect". This entire attack could be bypassed in the case at bar by pointing out that this is a case brought by a person who wants to be a candidate for the *Legislature* in a Republican Primary; and there is no question of conflict regarding "offices" so far as members of the Legislature are concerned. But it is well that we go further and consider the argument advanced by appellants. Section 5 of the Act — which we have heretofore copied — m e n t i o n s "United States Senate, United States House of Representatives, State, District, or County office." Section 3 of the Act adds, by parenthetical expression, "including National, State, and County Committeemen and Committeewo-

men''; and Section 1 of the Act adds, by parenthetical expression, ''including Township or Precinct Committeemen''.

Because of the parenthetical additions in Sections 1 and 3, appellants argue that the entire Act is void for uncertainty. They claim that under Sections 1 and 3 of the Act, the Democratic and Republican National, State, and County *Committee members,* as well as Township and Precinct *Committee members,* would have to be voted on in the *General Election.* We do not so interpret the Act. The election of the National, State, County, Township, and Precinct Committee members of each Party will be settled by the Primary election of each Party, as these are Party officers and not candidates of the Party in the *General* Election.

It is only the candidates of the Party for nomination in the General Election that go on the General Election ticket. Democratic Committeemen are *Party* officers; as are Republican Committeemen; and this Act must be construed in the light of the law existing when the Legislature adopted the Act. The parenthetical expressions in Sections 1 and 3 of the Act, relating to National, State, County, Township, and Precinct Committee members, were undoubtedly added to make sure that § 3-217 Ark. Stats. was followed. With this understanding, the Act loses the ''vague and uncertain'' features urged by appellants.

We frankly confess that the Act No. 205 does cast some doubt on § 3-254 Ark. Stats. as to whether Municipal officers and Township officers may still be nominated by conventions. Section 1(b) of the Act No. 205 says:

''Nominees of any political party for Township or Municipal offices may be declared either by (1) certificate of primary election called, held and conducted as required by law; or (2) by petition of electors as provided in Section 3-261, Arkansas Statutes of 1947.''

It is a question whether Act 205, by implication, repeals § 3-254 Ark. Stats. But the Legislature can easily reme-

dy that uncertainty by passing definite legislation. The question here before us is, whether the Newton County Republican Central Committee should have a primary election for State, District, and County offices; and there is no need for us to "borrow trouble" by considering municipal and township matters, as those issues are not now before us. We merely make this observation for the information of future Legislatures.

B. Appellants say that, under Act No. 205, should a vacancy of a nomination occur *after* the primary and *before* the General Election, then no one could fill such vacancy because — appellants say — under Section 1(d) of the Act the nominees have to be declared by a certificate of the Chairman and Secretary of any Convention of Delegates, and the Convention of Delegates might have already adjourned before such vacancy. We point out that by § 3-264 Ark. Stats. the Central Committee has power to name a nominee of the Party, should the previously named nominee pass away or decline the nomination. So appellants' argument fails as regards this point.

C. Appellants next assail that portion of Section 2 of the Act No. 205 which says that Primary elections of each political Party "shall be held at the same place and on the same day". Appellants say that the confusion that would result from enforcing this law "would be unimaginable". We do not view the language as do the appellants. The words in the Act do not mean that there will necessarily be held a balloting in the same *room*. The words "same place" could mean in the same general locality. Certainly the requirements would be satisfied if in one room of a building there were the officials and ballot boxes for holding the Republican Primary, and in another room there were the officials and ballot boxes for holding the Democratic Primary.[3] The point is, that the legislation requires a voter to decide to which

---

[3] Should there be a third party, then that party would likewise be governed by this Act; but at present we have only two Parties in this State, so we use the existing Parties to explain the meaning of the Act.

Party he belongs and to vote in that Primary, *only*. This is crystal clear from the Act. Each Party may run its own Primary election, entirely separate and independent of the other, and the voters of one Party are not to participate in the Primary election of the other Party. Should the political Parties desire to have expenses reduced, then they might do so my mutual consent and agreement. We might envisage that the State Central Committee of each Party could decide that it wants to empower the County Committees to work out a joint arrangement with the opposition Party to reduce the expense of the election; and if such permission be given by the State Committee to the County Committees, then the County Committees could decide how far they desired to go with the opposition Party in reducing the expense of the election. We cannot hold the Act void because appellants do not like some of its provisions.

D. Next the appellants attack that portion of Section 3(g) of the Act which requires the certificate of nomination to be accompanied by the receipt of the Treasurer or Collector of each County in which said candidate is to be voted for. Appellants say: ''In the light of the existing law on the subject, does Section 3(g) mean that in a statewide race a candidate must file the receipt of the 'Treasurer or collector of each County'?'' We think that appellants are trying to apply Section 3(g) to the Primary elections. It is perfectly clear that the section applies only to the *General Election*. If a person becomes the nominee of his Party then he (or his Party for him) complies with Section 3(g) of the Act No. 205. That has been the law for a long time. It was first adopted in 1891. The wording of Section 3(g) is practically identical with a portion of the language found in old § 3-261 of the Statutes.

E. Finally, appellants say that Section 4 of Act No. 205 repeals § 3-266 Ark. Stats. and therefore leaves the law in hopeless confusion. We do not agree with appellants' conclusion. Section 3-266 of Ark. Stats. was Act No. 479 of 1949. Prior to that Act, candidates

unopposed in a Primary were nevertheless voted on, in the Primary election. The repeal of § 3-266 Ark. Stats. puts the law in that regard back to where it was before 1949 and certainly leaves no "hopeless confusion" or great unnecessary expense.

F. In the brief of the *amicus curiae* it is suggested that there is much uncertainty as to whether Sections 1(c) and 3(c) authorize independent candidates without Party affiliation to run in the Primary election. We understand these Sections provide the procedure whereby an independent candidate may get his name on the ticket in the *General* Election, and have no reference to Primary elections. We reiterate that Section 5 of the Act makes clear that it is the purpose of the Act to have Party nominations by *Primary elections* rather than by *Convention* action; and with that general understanding the other questions arising because of the Act seem to fit into the general pattern of our Primary election laws. It is said that the Act is loosely drawn and bears evidence of having been hastily prepared. Possibly so: but, as we have previously remarked, it is not the duty of the courts to act as supervisors of legislation: it is the court's duty to interpret, apply, and construe the legislation; and with that general thought in mind, we can find no reason for saying that the Act No. 205, is so vague and conflicting as to be null and void.

II. *In Their Second Point Appellants say:* *"Said Act being not severable and being in conflict with its own terms and with the general primary election laws of this State, it is impossible of performance and deprives the candidate of the right to seek office and the elector of his franchise."* Under this point appellants invoke the rule which declares that when a Statute is indivisible and is void in part and the Court cannot determine that the Legislature would have adopted the remainder of the Statute without the void portion, then the entire Statute must fall. *Ex parte Jones,* 49 Ark. 110, 4 S. W. 639; *State ex rel. Attorney Gen-*

*eral* v. *Williams-Echols Dry Goods Co.,* 176 Ark. 324, 3 S. W. 2d 340; *Webb* v. *Adams,* 180 Ark. 713, 23 S. W. 2d 617; and *Oates* v. *Rogers,* 201 Ark. 335, 144 S. W. 2d 457. We have studied every attack on the Act listed by the appellants and the *amicus curiae,* and we find no reason for holding the Act void; so there is no necessity to discuss the applicability of the statutory rule here invoked by appellants. We reach the conclusion that the Act is capable of fair interpretation, construction, and administration; and we refuse to declare it void.

III. *Constitutionality. The Appellants' Third Point Is: "That the ruling of the trial court offends Section 5 of Amendment 29 to the Constitution of the State of Arkansas".* This point lacks merit. Section 5 of Amendment 29 to the C o n s t i t u t i o n of Arkansas reads: "Only the names of candidates for office nominated by an organized political party at a convention of delegates, or by a majority of all the votes cast for candidates for the office in a primary election, or by petition of electors, as provided by law, shall be placed on the ballot in any election". Appellants in effect claim that by this language the Constitution made it mandatory that an organized political party could have a convention of delegates. We do not so understand the law. Under this Constitutional Amendment, the Legislature was free to allow *either* convention action, *or* primary action, *or* petition of electors. The words are separated by the disjunctive "or", so that a candidate selected by any one of the three methods — convention, primary, or petition — could have his name placed on the ballot. The Amendment was not designed to guarantee a vested right in any political Party to any one of the methods mentioned in the Amendment. It is claimed that the Act 205 infringes on the United States Constitutional Amendment 1 and Amendment 14, and Arkansas Constitution Art. II § 4 and Art. III §§ 1 and 2. We see no merit in this argument. Our opinion in the case of *Adams* v. *Whittaker,* 210 Ark. 298, 195

S. W. 2d 634, answers all the arguments that could be made on such claims.

Finding no error, the judgment is affirmed.