COFFELT v. BRYANT, SECRETARY OF STATE.

5-3433                                             381 S. W. 2d 731

Opinion delivered September 14, 1964.

*Kenneth Coffelt,* for appellant.

*Bruce Bennett,* Atty. General, By: *William L. Paton, Jr.,* Asst. Atty. Gen. and *Jerry L. Patterson,* Asst. Atty. Gen., for appellee.

BRUCE IVY, Special Associate Justice. This is an action brought by appellant for a writ of mandamus to have his name placed on the ballot as an Independent Candidate for the office of Attorney General of the State of Arkansas at the General Election to be held November 3, 1964.

Appellant presented to appellee a ·petition signed by seventy-five qualified electors of the State of Arkansas and demanded that his name be placed on the ballot as an Independent Candidate. Appellee refused said petition, basing his action upon an Opinion from the Attorney General of the State of Arkansas, because appellant had failed to secure the signatures of 46,214 qualified electors, being 15 percent of the total votes cast for all candidates for the office of Governor at the preceding election. Appellant also tendered to Nancy J. Hall, State Treasurer, a check in the sum of $37.50 as a filing fee, which was refused.

Subsequent to the refusal of his petition and the ballot fee appellant brought this action.

Appellant alleged, among other things, that the refusal of his petition and the filing fee violates his rights under the Constitution and the Laws of the State of Arkansas, the Constitution of the United States of America and particularly Act 205 of the Arkansas General Assembly of 1957 and violates the Fourteenth Amendment to the Constitution of the United States of America. He claims that Act 205 of 1957 gives him the right to be an Independent Candidate by securing the signatures of not less than 50 nor more than 1,000 qualified electors. He also alleges that to require signatures of 46,214 qualified electors would prohibit any person from becoming an

Independent Candidate for a state office. That such a requirement would discriminate against an Independent Candidate for public office. He alleges that the action of appellee makes it impossible for an Independent Candidate, without party affiliation, to run for public office in the State of Arkansas. He prays for a writ of mandamus directing appellee to accept his petition and place his name on the ballot to be voted on at the General Election on November 3, 1964.

The matter was heard before Special Judge Guy Amsler, Jr., on August 6, 1964, and the court found in favor of appellee, from which judgment appellant brought this appeal.

In appellant's brief he sets out the points to be relied upon, which are as follows:

"1. The judgment of the lower court is contrary to the provisions of Section 5, Amendment 29, and Sections 3, 4, and 18, Article 2, and Section 2, Article 3, Bill of Rights, Arkansas Constitution, and Act 205 of the Acts of the General Assembly of the State of Arkansas for 1957, and Section 1, Amendment 14, and par. 1, Section 2, Article 4, United States Constitution, and violates appellant's rights and the rights of the electors of this State, under the provisions of these laws.

"2. Act 352 of the Acts of the General Assembly of the State of Arkansas for 1955, upon which appellee relies, on the advice of the Attorney General, is unconstitutional in that it conflicts with Section 5, Amendment 29, and Sections 3, 4, and 18, Article 2, and Section 2, Article 3, Bill of Rights, Arkansas Constitution, and Section 1, Amendment 14, and par. 1, Section 2, Article 4, United States Constitution, because

"(a) The act places an unreasonable, arbitrary and prohibitive burden on appellant, and others similarly situated, and the electors of this state.

"(b) The Act discriminates against appellant and the electors in that it places an arbitrary, unreasonable, greater and prohibitive burden on an In-

dependent Candidate for office and his supporters as compared to candidates for office with party affiliation, and as compared to candidates for municipal and Township offices and for vacancies in office, and the supporters of those candidates.

"(c) The act destroys the right of equality of all persons before the law, and the right of the people to petition to enforce their inalienable rights. The Act abridges these rights. The Act grants to certain citizens and classes of citizens privileges and immunities which upon the same terms do not apply, and are not required of other citizens.

"(d) The Act makes elections in Arkansas everything but free and equal, and prevents the free exercise of the right of suffrage.

"(e) The Act abridges the privileges and immunities of petitioner and the citizens and electors of Arkansas, and deprives them of their liberty to seek office as an Independent, and to vote for an independent candidate for state office, without due process of law, and denies to them the equal protention of the laws.

"3. Act 352 of the Acts of the General Assembly of the State of Arkansas for 1955 was repealed and superseded by Act 205 of the Acts of Arkansas for 1957."

There seem to be only Two (2) main issues involved:

NUMBER ONE: Was Act 352 of 1955 repealed by Act 205 of 1957? Whether or not the law still requires Independent Candidates running for state offices, where there is no vacancy, to secure the signatures of fifteen percent (15%) of the total vote cast for Governor at the prior General Election.

NUMBER TWO: Whether or not Act 352 of 1955 discriminates against Independent Candidates and is in violation of the Constitution of the State of Arkansas and the Constitution of the United States and whether or not said act is unconstitutional.

In taking up and considering Number One, we have carefully studied and considered the provisions of Act 205 of 1957. The title of this Act reads as follows:

"AN ACT to Amend the Election Laws of This State to Require Primary Elections in Certain Instances; to Repeal Conflicting Laws; and for Other Purposes."

Section 1 of said Act amends Section 1 of Act 238 of 1943. Section 2 amends Section 1 of the initiated Act 1 of 1916, as amended by Section 1, Act 277 of 1951, Section 3-204, Arkansas Statutes of 1947. Section 3 of said Act amends Section 22 of Act 30 of 1891, Section 3-261, Arkansas Statutes of 1947. Section 4 provides that Section 1, Act 479 of 1949, Section 3-266, Arkansas Statutes of 1947, was repealed in its entirety. In the closing of the Act it states "Any provision of our election laws to the contrary is hereby repealed in its entirety to this extent."

It will be seen that Act 205 of 1957 refers to specific Acts to be amended or repealed and no reference is made to Act 352 of 1955. The provisions of Act 352 of 1955 are not in conflict with Act 205 of 1957.

In addition to the Amendments and repeal of certain Acts, Act 205 of 1957 fixes the law for the nominations of any and all major political parties as candidates for public offices in the State of Arkansas and regulates the holding of these elections.

The Act also provides the methods by which an Independent Candidate may qualify to run for office in case of a vacancy. One of the methods is by a petition of not less than 50 nor more than 1,000 qualified electors, for state offices.

Appellant contends that Act 352 was repealed directly by Act 205, or by implication. This court has held that repeals by implication are not favored. *Arnold* v. *City of Jonesboro,* 227 Ark. 832, 302 S. W. 2d 91; *Daniel* v. *City of Clarksville,* 232 Ark. 31, 334 S. W. 2d 645; *Bond* v. *Missouri Pacific R. Co.,* 233 Ark. 32, 342 S. W. 473.

After a careful study of Act 205 of 1957 and the laws relating thereto, we hold that Act 352 of 1955 was not repealed by Act 205 of 1957 and was not repealed by implication. The provisions requiring an Independent Candidate who desires to run for a state office where there is no vacancy to secure a petition of 15 percent of the qualified electors are still in full force and effect.

In considering issue Number Two, whether or not Act 352 of 1955 discriminates against an Independent Candidate and is in violation of the provisions of the Arkansas Constitution and the Constitution of the United States and whether or not this Act is unconstitutional, we have given thoughtful consideration to appellant's argument and the citations contained in his brief. After making a study of the cases cited it is our opinion that these cases are not in conflict with the provisions of Act 352 of 1955.

Appellant contends that Act 352 of 1955 is unreasonable and arbitrary, places an undue burden upon Independent Candidates, discriminates against them in favor of other candidates, and is unconstitutional. He cites the following cases: *Spreckles* v. *Graham,* 194 Cal. 516, 228 P. 1040; *Hooper* v. *Britt,* 203 N. Y. 144, 151, 96 N. E. 371; *State ex rel Ragan* v. *Junkins,* 85 Neb. 1, 122 N. W. 473; *State ex rel Holliday* v. *O'Leary,* 43 Mont. 157, 115 P. 204.

After making a study of the cases cited it is our opinion that the holdings in these cases add very little to appellant's contentions.

Appellant also cites the cases of *Moorman* v. *Taylor,* 227 Ark. 180; *Fisher* v. *Taylor,* 210 Ark. 387; and *Newton County Republican Central Committee* v. *Clark,* 228 Ark. 965.

In the case of *Moorman* v. *Taylor* the court held that Act 352 of 1955 did not apply to city officers. That was the only question involved.

*Fisher* v. *Taylor.* Fisher was a resident of Mississippi County, Arkansas, but at the time he was serving in the United States Navy and desired to become a candidate for the office of State Representative in the

General Assembly for his County. While on a ship at sea he prepared and executed a power of attorney authorizing and empowering his mother to take the necessary steps to have his name placed on the ballot in the 1946 Democratic Primary Election. His mother in due time went to the Secretary of the Democratic Central Committee of Mississippi County and procured from him a blank Party Loyalty Pledge, signed the pledge, left it with the Secretary, and paid the required fee of $50.00, after which the Chairman of the County Central Committee returned the check and refused to place Fisher's name on the ballot. Thereafter appellant brought suit in the lower court praying that a writ of mandamus issue requiring his name to be placed on the official ballot. The lower court sustained the contentions of the Democratic Central Committee, and Fisher appealed.

In that case the court held: "Where there has been a substantial compliance with the party rules by one seeking to become a candidate for office, he should not be deprived of this privilege because of a failure to observe literally all requirements of such rules." The Court further stated: "The right to become a candidate for public office is a fundamental right, not to be curtailed without good cause; and any Statute or party rule, by which this right is diminished or impaired should receive a liberal construction in favor of a citizen desiring to exercise the right."

It can be seen that the *Fisher-Taylor* case has no bearing on the issues involved in this case. It did not mean that an Independent Candidate could by-pass a Primary Election and run for public office by paying $37.50 and having a petition signed by not less than 50 qualified electors.

*Newton County Republican Central Committee* v. *Clark*, 228 Ark. 965. This case involved the interpretation and validity of Act 205 of 1957, commonly called the Compulsory Primary Act, which involves all political parties. The holding in that case did nothing to impair the provisions of Act 352 of 1955, which only added other provisions to our election laws.

Again referring to appellant's contentions that Act 352 of 1955 is unreasonable, arbitrary and prohibitive, places an undue burden upon an Independent Candidate, and is unconstitutional, it is our opinion that the Legislature, in passing this Act, did not intend to place a lighter burden upon Independent Candidates than that placed upon candidates who run in party primaries.

This may well have been the reasoning of the General Assembly: The regular candidates who run for office are required to pay extensive filing fees which are used by the party to defray the expense of holding Primary Elections. In many cases these candidates are faced with strong opponents, and they are required to carry on a time-consuming and expensive campaign. After they have won the election and have become the successful nominees they should not be faced with Independent Candidates who have paid only a $37.50 filing fee and secured a petition with not less than 50 names signed by qualified electors, unless these Independent Candidates can show a public demonstration and demand for their election. If this condition should exist, it would not be to difficult for the Independent Candidate, where there is no vacancy, to secure a petition signed by not less than 15 percent of the qualified electors at the last election. To permit an Independent Candidate to run for office where there is no vacancy without securing a petition signed by 15 percent of the qualified electors would be unfair and unjust to the regular candidate who had been nominated for office. In addition to being unfair and unjust it could easily be argued that this would amount to a discrimination against the regular nominee.

Appellee denies that appellant's rights under the Fourteenth Amendment are in any way restricted by Act 205 of 1957. He cites the case of *Snowdon* v. *Hughes,* 64 S. Ct. 397, 321 U. S. 1, for which the United States Supreme Court held: ''The protection extended to citizens of the United States by the privileges and immunities clause . . . does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law. *Slaughter-House Cases,* 16 Wall. 36, 74, 79; *Maxwell* v. *Bugbee,*

250 U. S. 525, 538; *Prudential Insurance Co. v. Cheek,* 259 U. S. 530, 539; *Madden v. Kentucky,* 309 U. S. 83, 90-93. The right to become a candidate for state office, like the right to vote for the election of state officers, *Minor v. Happersett,* 21 Wall. 162, 170-78; *Pope v. Williams,* 193 U. S. 621, 632; *Breedlove v. Suttles,* 302 U. S. 277, 283, is a right or privilege of state citizenship, not of national citizenship which alone is protected by the privileges and immunities clause.''

Furthermore, even an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause. *Taylor and Marshall v. Beckham,* 178 U. S. 548; *Case v. Newell,* 246 U. S. 650.

There is no denial of equal protection unless there is shown to be present an element of intentional or purposeful discrimination. However, a discriminatory purpose is not to be presumed. *Tarrance v. Florida,* 188 U. S. 510. There must be shown ''clear and intentional discrimination.'' *Gundling v. Chicago,* 177 U. S. 183; *Bailey v. Alabama,* 219 U. S. 219. Certainly the appellant in the case at hand can show no ''clear and intentional discrimination'' directed toward him as an Independent Candidate for public office. The statute which he attacks sets out the same requirement for him as it does for any other Independent Candidate seeking any other political office in the State whereof a vacancy does not exist.

Act 352 of 1955 complies with and is not in violation of the Fourteenth Amendment to the Constitution of the United States. The United States Supreme Court in the case of *McDougal et al. v. Greene et al.,* 335 U. S. 281, 93 L. Ed. 3, 69 S. Ct. 1, upheld an Illinois statute which required that a petition to nominate a candidate for a General Election for new political parties be signed by at least 25,000 qualified voters, including 200 qualified voters from at least 50 counties in the State of Illinois.

Our law provides three methods by which a candidate may qualify for public office:

NUMBER ONE: He can become the nominee of one of the parties in the Primary.

NUMBER TWO: He may become an Independent Candidate through nomination by petition in compliance with Act 352 of 1955 where there is no vacancy, or in compliance with Act 205 of 1957 where there is a vacancy.

NUMBER THREE: By qualifying as a write-in candidate as required by law, Arkansas Statutes Annotated, § 3-826 and § 3-1022.

The court will take judicial knowledge of the fact that write-in candidates have met with success in previous elections in this state. This avenue is still open to appellant if he desires to follow it.

After full consideration of all the facts and the law we are of the opinion that Act 352 of 1955 is not unconstitutional and that the constitutional rights of appellant have not been violated.

Finding no error the Judgment of the lower court is hereby affirmed.

ROBINSON and HOLT, JJ., not participating. Special Associate Justice E. DEMATT HENDERSON also sat in the case.