Bill HILL, d/b/a BILL HILL'S AUTO
*v.* BANK OF NORTHEAST ARKANSAS,
A Banking Corporation

78-89                                          572 S.W. 2d 150

Opinion delivered October 23, 1978
(In Banc)

*Kelly Webb,* for appellant.

*Parker & Henry,* by: *Mike Walden,* for appellee.

JOHN A. FOGLEMAN, Justice. This case involves the question whether a lender may perfect a lien on a motor vehicle under the provisions of Ark. Stat. Ann. § 75-161 (b) (Supp. 1977). The trial court held that it could and we agree.

On July 26, 1977, Ronnie Hogan borrowed $3,167.36 from the Bank of Northeast Arkansas. The loan was evidenced by a promissory note providing for repayment in 30 monthly payments of $119.76. It was secured by a security agreement describing a 1975 Chevrolet Monte Carlo, Serial No. 1H57H5D420253. The note and security agreement were mailed to the Motor Vehicle Division of the Department of Finance and Administration and filed there on August 22, 1977. Hogan kept the certificate of title to the vehicle, which had been issued in the State of Louisiana. On September 7, 1977, Hogan sold the vehicle to appellant Bill Hill for $2,650, and surrendered this certificate of title, which bore no evidence of any lien on the vehicle.

Hogan defaulted in payment of the note and appellee, on October 11, 1977, filed suit to replevy the automobile, which was then in Hill's possession. Hill defended on the ground

that the security interest of the bank had not been perfected as required by law. He asserted that his title was superior to any claim of the bank. The case was tried on a stipulation of fact. The trial judge held that the bank had perfected its lien pursuant to Ark. Stat. Ann. § 75-161 (b) and that the filing of the note and security agreement constituted constructive notice of the bank's lien. The bank was given judgment for possession of the automobile.

Appellant contends that the court was in error in holding that the bank's lien had been perfected and that the court also erred in holding that the filing of the note and security agreement constituted constructive notice of its lien. Appellant contends that in order to perfect its lien, the bank was required to comply with Ark. Stat. Ann. § 75-160 (b) by transmitting the certificate of title to the Department of Finance and Administration, along with the instrument creating the lien. He also contends that the court erred in holding that the filing of appellee's note and security agreement constituted constructive notice of the bank's lien.

As we view the statutes involved, their legislative history leaves us without any doubt about the correctness of the trial court's holding. The Uniform Motor Vehicle Administration, Certificate of Title and Antitheft Act [Ark. Stat. Ann. § 75-101 et seq (Repl. 1957)] was adopted by the General Assembly as Act 142 of 1949. Article V of that act was included as §§ 60 and 61, and appeared as Ark. Stat. Ann. §§ 75-160, -161 (Supp. 1951). As the act was then written, it was necessary, in order to perfect a lien, that the instrument creating it, accompanied by the certificate of title last issued for the vehicle, be deposited with the Title Department of the Motor Vehicle Division. § 75-160 (b) (Repl. 1957). This filing and issuance of a new title certificate, including a statement of the liens certified to the department, constituted constructive notice of all such liens to subsequent purchasers. §§ 75-160 (e), 161 (a) (Repl. 1957). This method of giving constructive notice was exclusive. § 75-161 (b) (Supp. 1951).

This legislation created a sort of "Torrens System" of automobile title registration, by which a subsequent purchaser could rely on the certificate of title itself to disclose

liens and encumbrances which were not dependent on possession. See 8 Thompson on Real Property (Perm. Ed.) 245 et seq, § 4405 et seq. This system remained relatively unchanged until the passage of Acts 138 and 805 of 1971. The changes then made clearly indicated that the General Assembly intended to provide for an alternate or optional means of perfecting a lien on a motor vehicle and of giving constructive notice thereof. These acts added what now appears as § 75-161 (b) (Supp. 1977), viz:

A lienholder may, *at his option,* file with the Department a certified copy of the instrument creating and evidencing such lien or encumbrance and shall remit therewith a fee of One Dollar ($1.00) for each lien to be filed, which such filing shall constitute constructive notice of such lien against the vehicle described therein to creditors of the owner, subsequent purchasers and encumbrancers, except such liens as are by law dependent upon possession. [Emphasis ours.]

The constructive notice shall be effective from the date of the execution of the instrument creating and evidencing the lien or encumbrance if the same is filed as authorized herein within ten (10) days after the date of the execution thereof. If the instrument is filed more than ten (10) days after the execution thereof, the constructive notice shall date from the time of the filing of the instrument. Provided, that the filing of a lien under the provisions of this subsection by the lienholder and the payment of the fee therefor shall in no way relieve any person of the obligation of paying the fee now required by law for filing of a lien to be evidenced on a certificate of title of a motor vehicle.

The portion of the statute [Ark. Stat. Ann. § 75-161 (a)] having to do with constructive notice under the original act was left unimpaired. It reads:

Such filing and the issuance of a new certificate of title as provided in this article [§§ 75-160, 75-161] shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the

owner, to subsequent purchasers and encumbrancers except such liens as may be authorized by law dependent upon possession. In the event the documents referred to in Section 62 [§75-162] are received and filed in the central office of the department within ten [10] days after the date said documents were executed the constructive notice shall date from the time of the execution of said documents. Otherwise constructive notice shall date from the time of receipt and filing of such documents by the department as shown by its indorsement thereon.

Another very significant change made by Act 138 appears in § 75-161 (c) which had previously been § 75-161 (b). That change may be fully appreciated by reproducing the subsection with the only change in brackets, viz:

The method[s] provided in this article of giving constructive notice of a lien or encumbrance upon a registered vehicle shall be exclusive except as to liens dependent upon possession and any said lien or encumbrance or title retention instrument filed as herein provided and any documents evidencing the same are hereby exempted from the provisions of law which otherwise require or relate to the recording or filing of instruments creating or evidencing title retention or other liens or encumbrances upon vehicles of a type subject to registration hereunder.

The use of the words "at his option" in § 75-161 (b) and the pluralization of the word "method" in § 75-161 (c) in the new version clearly indicate a legislative intent to provide alternate methods for perfection of liens and for giving constructive notice. Thus, the lien holder could either have the advantages of the "Torrens System" certificate or use the method that more nearly resembles our recording system, where a real estate mortgage is the lien instrument.

Appellant would have us ignore these significant changes in the governing statute. He places reliance upon language in § 75-160 (a) that no lien or encumbrance subject to registration is valid as to subsequent purchasers or encum-

brances unless the requirements of "this article have been complied with" and the language of § 75-160 (b) that the lien instrument must be "accompanied by the certificate of title last issued for such vehicle." "[T]his article" is § 75-160 and § 75-161. The latter section is quite different since the passage of the 1971 acts, as we have pointed out, and the requirements of "this article" may be met by either of two methods, one of which does not require that the lien instrument be accompanied by the certificate of title.

Appellant also argues that the matter of priority is governed by Ark. Stat. Ann. § 85-9-301 (Supp. 1977). The applicability of that section to motor vehicle liens coming within the purview of the Motor Vehicle Act is questionable to say the least. In any event, as we have pointed out, we take the alternate procedure to provide a method other than that previously existing for perfecting a lien, as well as for giving constructive notice. Appellant also advances the argument that, even if the later acts provide an alternate method for giving constructive notice, the original method for perfecting the lien is exclusive. If this were the case, there would really be no purpose in providing for the alternate method. Compliance with the procedures required under the original act would suffice for both perfection of the lien and the giving of constructive notice. And, in either event, appellant would have constructive notice of the bank's lien.

The advantages of the original system to an innocent prospective purchaser are readily apparent and the arguments in favor of continuing that system exclusively are appealing and persuasive. But the decision as to the merits of the change was a matter addressed to the General Assembly only. The wisdom, advisability, expediency, propriety, and necessity of particular legislation are matters solely for consideration of the legislative department and are not for judicial determination. *Southwestern Bell Telephone Co.* v. *Roberts*, 246 Ark. 864, 440 S.W. 2d 208; *Laman* v. *McCord*, 245 Ark. 401, 432 S.W. 2d 753; *McCastlain* v. *Oklahoma Gas & Electric Co.*, 243 Ark. 506, 420 S.W. 2d 893; *Haynie* v. *City of Little Rock*, 243 Ark. 86, 418 S.W. 2d 633; *Beaumont* v. *Faubus*, 239 Ark. 801, 394 S.W. 2d 478; *Cook* v. *Arkansas Missouri Power Corp.*, 209 Ark. 750, 192 S.W. 2d 210; *Reed* v. *Hundley*, 208

Ark. 924, 188 S.W. 2d 117. When the General Assembly has exercised its discretion in the execution of its powers, such matters are not subject to review by the courts. *Poole* v. *State,* 244 Ark. 1222, 428 S.W. 2d 628.

The judgment is affirmed.

BYRD and HOWARD, JJ., dissent.