Mr. Tim Leathers Chairman Arkansas State and Public School Employees Insurance Board 401 DFA Building Post Office Box 3278 Little Rock, Arkansas 72203
Dear Mr. Leathers:
This is in response to your request for an opinion on the following three questions of interest to the Arkansas State and Public School Employees Insurance Board (the "Board") relating to Act 1206 of 1995 (the "Act"):
 1. Is the Board required by the inclusion of the word "any" in the language of Ark. Code Ann. § 21-5-405(b)(2)(A)(I) to offer every health maintenance organization that offers a point of service option, when the requirement to do so would conflict with other duties of the Board and would contradict other mandates of the enacting legislation?
 2. [D]oes the provision in § 21-5-405(b)(2)(A)(ii) that the Board offer "The health benefit plan offered by the University of Arkansas for Medical Sciences-sponsored managed care program" prohibit the Board from establishing reasonable standards of operation of the UAMS program and selecting among the multiple benefit options offered by UAMS?
 3. Does Ark. Code Ann. § 21-5-401 et seq., in conjunction with Act 782 of 1995, empower the Board to take the actions necessary to fund the health insurance plan for public school employees on a self-insured basis?
With respect to your first question, your request states:
 The Board is aware of Arkansas Attorney General's Opinion No. 95-126, dated June 27, 1995, which expresses the opinion that the word "any" requires the Board to offer "each and every HMO that meets the requirement of the statute and wishes to participate." However, as the Board has assumed its overall duties under the Act, the Board has become aware of numerous and significant conflicts between the interpretation of the word "any" to mean "every" and other provisions of the Act. In short, the Board finds that the legislative directives spelled out for it in the Act seem largely unachievable if it cannot promulgate reasonable standards for all interested HMO bidders.
Your request goes on to state that Act 1206, codified at A.C.A. §§21-5-401 to -408 and 21-5-414 (Supp. 1995), had, as one of its legislative purposes, to create the Board to "manage the . . . health insurance and self-funded medical programs, so as to enhance the ability to control premiums, expand managed care capabilities . . . and study alternative funding arrangements. . . ." Request at 2, quoting A.C.A. §21-5-401(1). Your request also points out that the Board is authorized and required to "explore various cost containment measures," and "promote competition among vendors and create a systematic formula for measuring competitiveness of programs. . . ." A.C.A. § 21-5-404(1) and (3). You state that the Board will be unable to manage programs or attempt to contain costs, promote competition, or evaluate competitiveness of programs if it must offer each health maintenance organization that offers a point of service option ("HMO/POS").
Your request also quotes from A.C.A. § 21-5-404(5), which authorizes and requires to the Board to "[u]ndertake studies and take any appropriate action which it determines will promote the financial soundness and overall well-being of the . . . programs," and assert that this language should be interpreted as authorizing the Board to set bid criteria and operational and other standards to be met as conditions to participation by each HMO/POS wishing to participate.
You state that, in the event this office opines that the Board may do so, the Board will establish "minimum operational and performance standards consistent with the dictates of [Act 1206] in the RFP specifications" and that "each and every HMO/POS meeting those RFP standards would be automatically authorized to provide health coverage to State and Public School Employees." Request at 2.
Your request also states that, if the Act requires the Board to offer each HMO/POS that wishes to participate, "certain other powers, duties and objectives mandated by the Act can fall completely out of the control of the Board, and therefore be unenforceable." Request at 2. While your request does not specify the additional powers, duties, and objectives to which your refer, it does give four examples of how the Board's inability to promulgate and enforce standards for HMO/POSs "could be used to escape accountability to the Board that is otherwise mandated by the Act. . . ." Request at 3. The examples illustrate problems of adverse selection, use of misleading marketing materials, refusal to provide data, and geographically selective service. You state that an HMO/POS's refusal to provide data to the Board would circumvent A.C.A. § 21-5-404(1) and (3) (quoted above) and that one offering geographically selective service would frustrate the Board's duty to promote rural access to managed care.[1]
Although this is a difficult issue that ultimately may require judicial determination, it is my opinion that the Board must offer each and every HMO/POS that wishes to participate. It is my view that no objective or mandate of the Act would be so frustrated by the inclusion of all HMO/POSs that A.C.A. § 21-5-405(b)(2)(A)(i) (requiring the inclusion of "any" HMO/POS) must be deemed to be negated by other provisions of the Act; in other words, the provisions of the Act cited in your request are not, in my opinion, sufficiently in conflict with A.C.A. §21-5-405(b)(2)(A)(i) that all of them cannot be given effect.
I accept your assertion that the inclusion of all HMO/POSs will make it more difficult to achieve certain of the general objectives of the Act. In my opinion, however, none of them will be frustrated to a degree that would permit the Board to disregard the language of A.C.A. §21-5-405(b)(2)(A)(i), as interpreted in Op. Att'y Gen. 95-126. The inclusion of all HMO/POSs likely will make it more difficult to manage programs; enhance the ability to control premiums; expand managed care capabilities; study alternative funding arrangements; explore cost containment measures; promote competition; and create a systematic formula for measuring competitiveness. However, all of these objectives and mandates are to be undertaken within the context of the Act, which, in my opinion, requires the inclusion of all HMO/POSs. The fact that a specific requirement of legislation may make the general objectives of the statute more difficult, but not impossible, to advance does not justify disregarding an affirmative and specific mandate of the statute.
In addition, even if provisions of the Act are in irreconcilable conflict, and one or more must be deemed to be repealed by implication by other provisions, it appears that the specific requirement to include all HMO/POSs might well be held to repeal the generally-stated objectives of the Act. In the interpretation of statutes, specific provisions control and take precedence over general ones, whether or not the provisions are part of the same enactment. Valley Nat'l Bank of Arizona v. Stroud,289 Ark. 284, 711 S.W.2d 785 (1986) (different enactments); Scott v. Greer,229 Ark. 1043, 320 S.W.2d 262 (1959) (same enactment).
As you point out, the Board is authorized by statute to "[u]ndertake studies and take any appropriate action which it determines will promote the financial soundness and overall well-being of the state employee and public school personnel health insurance programs." In my view, however, this provision must be interpreted only those actions that are both deemed appropriate and not contrary to the Act. The promulgation of rules that would prevent the offering of all HMO/POSs that wish to participate would, in my opinion, be contrary to the specific mandate of A.C.A. §21-5-405(b)(2)(A)(i).
It seems entirely reasonable that the Board should be empowered to impose standards upon participants, but it is well-established that "[t]he wisdom, advisability, expediency, propriety, and necessity of particular legislation are matters solely for consideration of the legislative department and are not for judicial determination." Hill v. Bank ofNortheast Arkansas, 264 Ark. 412, 417, 572 S.W.2d 150 (1978) (citations omitted). "The mere fact that a statute may seem to be more or less unreasonable or unwise does not justify a court in annulling it, as courts do not sit to supervise legislation. Courts do not make the law; they merely construe, apply, and interpret it." Newton County RepublicanCentral Committee v. Clark, 228 Ark. 965, 968-969, 311 S.W.2d 774
(1958).
With respect to your second question, it is my opinion, for reasons similar to those stated above and in Op. Att'y Gen. 95-126, that the Board may not establish standards of operation for "[t]he health benefit plan offered by the University of Arkansas for Medical Sciences-sponsored managed care program." A.C.A. § 21-5-405(b)(2)(A)(ii). The Act's affirmative mandate to offer this program is not consistent with the application of requirements to the program, which application might result in the program's not being offered.
The Act clearly envisions a single UAMS "health benefit plan." Your request indicates that UAMS offers "multiple benefit options." Without further information, I cannot determine the legislative intent underlying A.C.A. § 21-5-405(b)(2)(A)(ii) in this regard. The interpretation of an agency charged with administering a statute, while not conclusive, is entitled to significant deference. Technical Serv. of Arkansas, Inc. v.Pledger, 320 Ark. 333, 896 S.W.2d 433 (1995). Because the Act is ambiguous on this point, it is my opinion that the Board's reasonable interpretation of the Act in this area likely would be upheld by the courts, whether the Board determines to offer only one, or more than one, benefit option offered by UAMS.
With respect to your third question, it is my opinion that Act 782 of 1995 is of no legal effect. It should be noted that the only substantive provision of Act 782, approved by the Governor on March 24, 1995, was an amendment to A.C.A. § 6-17-1108 (Repl. 1993). Act 1206, approved by the Governor on April 11, 1995, expressly repealed A.C.A. § 6-17-1108. Act 1206, § 9. In addition to Act 1206's express repeal of A.C.A. § 6-17-1108, the Arkansas Code Revision Commission has determined that the amendment of A.C.A. § 6-17-1108 by Act 782 was superseded by Act 1206 pursuant to A.C.A. § 1-2-207(b), the two acts concerning the same subject matter and Act 1206 being the later enactment. See A.C.A. §§ 6-17-1101 to -1108 [Repealed] (A.C.R.C. Notes) (Supp. 1995). Act 1206 contained an emergency clause providing for its effectiveness upon passage. Act 1206, § 14. Act 1206 was, accordingly, effective on April 11, 1995, and repealed A.C.A. § 6-17-1108 as of that date. Act 782 had no emergency clause and became effective July 28, 1995. See Op. Att'y Gen. 95-119. On that day, A.C.A. § 6-17-1108 was not in effect or capable of being amended. It is my opinion, therefore, that Act 782 is of no legal effect.
In my opinion, however, it is likely that Act 1206 likely would be held to empower the Board to fund a health insurance plan for public school employees on a self-insured basis. The Board is authorized and directed to "[p]romote increased access to various plan options and health care models" including "[a]ny . . . [health care] plans deemed suitable by the board." A.C.A. § 21-5-405(b)(2)(A). In my view, this language is sufficiently broad to permit the funding of a self-insured health plan.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] "Access to managed care will be provided by giving preferential treatment, if required, to those vendors who will enhance benefit options availability in rural Arkansas." A.C.A. § 21-5-405(b)(2)(B).